STERLING FREIGHT LINES, INC., *et al.*, Plaintiffs-Appellants, v. PRAIRIE MATERIAL SALES, INC., Defendant-Appellee.

Second District    No. 2—96—0162

Opinion filed December 31, 1996.—Rehearing denied January 29, 1997.

Craig R. Belford and Tracy D. Kasson, both of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellants.

Larry L. Thompson and James W. Joseph, both of Bell, Boyd & Lloyd, of Chicago, and Daniel J. Cronin and Susan M. Garvey, both of Kubiesa, Power & Cronin, Ltd., of Oakbrook Terrace, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Sterling Freight Lines, Inc., sued defendant, Prairie Material Sales, Inc., for breach of contract. During a bifurcated bench trial, the circuit court of Du Page County first found defendant liable for breach of contract. After the trial on the issue of damages, the court determined plaintiff's damages arising from the breach to be $84,820. Plaintiff appeals from the damages award. We affirm in part and reverse in part and remand.

Defendant is in the ready-mix concrete business. Plaintiff was a bulk hauling company. In 1975, defendant and plaintiff signed an exclusive hauling agreement giving plaintiff the exclusive right to haul bulk cement and additives from cement manufacturers to defendant's plants located in the southern suburbs and south side of Chicago. The agreement ran from June 1975 to June 1981 and included two two-year options by which plaintiff could extend the contract.

Plaintiff hauled bulk cement for defendant during the life of the contract. In 1980, plaintiff chose to exercise its option to extend the hauling contract. In June 1980, defendant purchased A-1 Cartage (A-1), a hauling company. On January 20, 1981, defendant terminated the contract. Plaintiff thereafter filed for bankruptcy in 1983.

During the damages trial, Raymond Throckmorton, plaintiff's expert, testified that plaintiff's damages from January 1981 to June 1984 due to defendant's breach totaled $1,657,119. Further, when he adjusted for the effect of inflation through October 1995, the damages totaled $2,567,469.

Concerning his methodology, Throckmorton testified that he first calculated plaintiff's dry bulk revenues for the period beginning January 1981 and ending June 1984. This was accomplished by taking the 10 months of dry bulk revenue generated during fiscal year 1980 (March 1980 to January 1981) and figuring a monthly average. This figure was further modified by the percentage of dry bulk hauls made on defendant's behalf compared to the total number of dry bulk hauls to arrive at a final monthly average. This final monthly average was used as a base number for the fiscal years 1981 through 1984. Throckmorton then calculated a growth rate based on A-1's growth during the relevant time period and applied it to the base number. Throckmorton next calculated the expenses saved by defendant's breach in a similar fashion and subtracted them from the revenues to arrive at the total damages amount of about $1.7 million. He finally calculated an inflation multiplier for the period of March 1981 through September 1995 to arrive at the inflation-adjusted figure of about $2.6 million.

Defendant did not present an expert witness of its own, but challenged Throckmorton's methodology during cross-examination. Defendant accepted plaintiff's general methodology but disagreed with three assumptions: (1) the percentage of plaintiff's overall business attributable to defendant; (2) the growth rate to be applied to plaintiff's business; and (3) which expenses should be used to calculate plaintiff's damages.

After the evidence was presented, the trial court rejected

plaintiff's figure for mix of business, which was based on a six-year average (representing the life of the contract). Instead, the court used a figure for mix of business for the year immediately preceding the breach. Next, the court declined to apply any growth rate over the remainder of the contract, finding that both the plaintiff's and defendant's proposed growth rates were too speculative. Finally, the court rejected plaintiff's tally of expenses and instead included fixed costs and depreciation in the damages calculation. The court also determined that an adjustment for inflation would be improper in this case. The court found that plaintiff had incurred damages of $84,820 arising from defendant's breach of the exclusive hauling agreement.

Plaintiff raises a number of issues on appeal, all of which are encompassed by the general question of whether the trial court correctly calculated the damages arising from the breach of contract. Plaintiff specifically challenges the trial court's deduction of fixed overhead expenses from gross contract revenues; the trial court's failure to apply an inflation adjustment factor to the judgment; the trial court's rejection of plaintiff's growth factor; and the trial court's rejection of plaintiff's mix-of-business percentage.

■ Generally, the "monetary award [of damages] should, to the extent possible, put the nonbreaching party in the position he would have been in had the contract been performed." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 196 (1994). Damages must also be proved with reasonable certainty. *F.E. Holmes & Son Construction Co. v. Gualdoni Electric Service, Inc.*, 105 Ill. App. 3d 1135, 1141 (1982). Additionally, while lost profits, gross profits less costs, provides the proper measure of damages, the parties disagree about the method that should have been used to calculate plaintiff's lost profits.

Plaintiff initially asserts that the trial court erred when it deducted plaintiff's fixed overhead expenses from the gross contract revenues. According to plaintiff, lost profits are calculated by subtracting direct and variable costs from the contract price. Plaintiff defines direct and variable costs as those costs which are avoided as a result of the breach. Fixed overhead, states plaintiff, is incurred regardless of the contract at issue and cannot be avoided as a result of a breach. Therefore, plaintiff asserts that they are not included in the damages calculation and it was error for the trial court to include fixed overhead expenses as a part of its damages calculation. Defendant does not specifically address plaintiff's argument. Instead, defendant essentially contends that the trial court's assessment of damages was not against the manifest weight of the evidence.

■ We will not disturb the damages assessed by a trial court sit-

ting without a jury unless its judgment is against the manifest weight of the evidence. *Lynch v. Precision Machine Shop, Ltd.*, 93 Ill. 2d 266, 278 (1982). A trial court's damages assessment is against the manifest weight of the evidence when it ignored the evidence or used an incorrect measure of damages. *B&Y Heavy Movers, Inc. v. Fluor Constructors, Inc.*, 211 Ill. App. 3d 975, 984 (1991); *MBC, Inc. v. Space Center Minnesota, Inc.*, 177 Ill. App. 3d 226, 234 (1988). It is on this latter ground that we hold that the trial court erred in determining plaintiff's damages.

■ Damages assessed for lost profits are to be based on net profits. *Getschow v. Commonwealth Edison Co.*, 111 Ill. App. 3d 522, 534 (1982). Net profits are calculated by "subtracting the expenses necessary for plaintiff's full performance from the contract price because these expenses are generally avoided by the defendant's breach." *Holmes*, 105 Ill. App. 3d at 1141. The cost of performance is made up of direct costs, like labor and materials, and indirect costs, such as overhead. *Holmes*, 105 Ill. App. 3d at 1141. Those costs that are avoided as a result of the defendant's breach are deducted from the contract price. *Holmes*, 105 Ill. App. 3d at 1141. These avoided expenses include the direct costs and the indirect costs (overhead), called variable indirect costs, avoided by the defendant's breach. *Holmes*, 105 Ill. App. 3d at 1141. The indirect costs that cannot be avoided by the defendant's breach, called fixed indirect costs, are not deducted from the contract price. *Holmes*, 105 Ill. App. 3d at 1141.

■ In the instant case, the trial court erred in calculating lost profits. The trial court stated:

"In this particular case involving a small business, it defies common sense to exclude fixed costs when [defendant] constituted in the area of 60 percent of the total revenues of [plaintiff].

Perhaps the elimination of fixed costs would be proper in a large corporation where the breach constitutes a fairly small amount of the total revenue, but it is clear to the Court that failure to consider the fixed costs and depreciation would lead to a very skewed result."

The court then proceeded to deduct plaintiff's fixed costs from its gross contract revenues in arriving at its damages amount. This was error.

The facts in this case are governed by *Central Information Financial Services, Ltd. v. First National Bank*, 128 Ill. App. 3d 1052 (1984). There, the defendant's breach cost the plaintiff one of only two contracts on which it was working. *Central Information*, 128 Ill. App. 3d at 1062. In determining damages, the court reasoned that " 'since overhead is fixed and nonperformance of the contract

produced no overhead cost savings, no deduction from profits should result.' " *Central Information*, 128 Ill. App. 3d at 1062, quoting *Vitex Manufacturing Corp. v. Caribtex Corp.*, 377 F.2d 795, 798 (3d Cir. 1967). The court determined that an appropriate damages calculation would be "to award damages for the contract price less the award of expenses saved because the injured party is not required to perform." *Central Information*, 128 Ill. App. 3d at 1063. This method is simple, "because it does not require any determination as to the amount of overhead to allot to the breached contract" and "will reach a fair result." *Central Information*, 128 Ill. App. 3d at 1063.

The instant case is factually similar to *Central Information* and thus deserves similar treatment. Here, plaintiff lost slightly less than half of its business due to defendant's breach of the contract. Plaintiff presented evidence that its overhead expenses could not be avoided due to the breach. Under the rationale of *Central Information*, fixed overhead expenses should be entirely excluded from the damages calculation. Hence, the trial court erred by including plaintiff's overhead expenses in its damages calculation. Accordingly, the damages award must be reversed and the cause remanded to the circuit court in order to recalculate plaintiff's net profits under the exclusive hauling agreement.

■ Plaintiff next asserts that the trial court's determination that defendant accounted for 61.4% of plaintiff's business under the exclusive hauling agreement was against the manifest weight of the evidence. Plaintiff contends that its mix-of-business calculation, using a six-year average, was mandated by the evidence presented at trial. We disagree.

The evidence presented at trial showed that the number of hauls plaintiff made for defendant declined by 30 points from 87% in fiscal year 1979 to 57% in fiscal year 1981. Plaintiff contends that this decrease was due to defendant pulling its business away from plaintiff in anticipation of its breach. Thus, according to plaintiff, its use of a six-year average corrects for the effect of defendant's move away from plaintiff.

This contention overlooks testimony showing that plaintiff was also expanding its business into hauling liquid chemicals and edibles. Both Throckmorton, plaintiff's expert, and Richard Jousma, Jr., plaintiff's president, admitted that plaintiff's business strategy was to expand its customer base with new business and to move towards becoming a chemicals and edibles hauler.

Based on this evidence, the trial court chose to use the mix of business from the year immediately preceding the breach because it was "the most representative measure of that mix of business since it

was the time immediately prior to the breach." The trial court also noted that the mix of business over the length of the contract had "vastly fluctuat[ed]." The trial court's rejection of plaintiff's six-year average for the mix of business was thus supported by evidence that the decline of plaintiff's business was due to its own actions and business strategy. Accordingly, we cannot say that the trial court's determination that the proper mix-of-business factor was 61.4% was against the manifest weight of the evidence.

■ Plaintiff next asserts that the trial court erred in its damages calculation by refusing to apply a growth factor to its calculation of plaintiff's lost profits. We hold that the trial court's determination was not against the manifest weight of the evidence.

At trial, plaintiff used A-1, defendant's captive hauling company, as a model on which to base its own projected growth for the period of the breach. Plaintiff contended that, but for defendant's breach, it would have made the hauls that A-1 actually made during the period of the breach. Plaintiff claimed that the growth in the number of hauls A-1 made for defendant during the period of the breach was similar to the growth it would have experienced itself had defendant not breached the contract. Thus, according to plaintiff, A-1's growth approximated that which it should have experienced.

Plaintiff also asserts that "no evidence was admitted to support the [trial c]ourt's assumption that [plaintiff's] business would experience zero growth during the period of [defendant's] breach." Plaintiff claims that "the only evidence presented at trial regarding [its] growth rate established that [plaintiff] would have experienced substantial positive growth during the period of [defendant's] breach." This is not strictly true.

Defendant elicited evidence to show that A-1 was not an independent hauling company like plaintiff, but rather, it was a captive subsidiary. Plaintiff's expert, Throckmorton, did not examine the actual industry profitability of noncaptive hauling companies during the early 1980s, even though those years were a tough period for hauling companies. Throckmorton also did not know whether A-1 received any capital investment from defendant, whether it hauled the same products as plaintiff, or whether it hauled to the same plants as plaintiff. Moreover, defendant's vice-president testified that A-1 hauled significantly different materials, hauled to different plants, and worked more shifts than plaintiff. Finally, Throckmorton did not investigate what caused A-1's growth. Thus, there was ample evidence to allow the trial court to conclude that A-1 was not a comparable company to plaintiff and that a growth factor based on A-1's performance was speculative. Accordingly, the trial court's rejection

of the growth factor was not against the manifest weight of the evidence.

■ Plaintiff finally argues that the trial court erred as a matter of law by refusing to adjust its lost profits award for inflation. Plaintiff contends that "it is proper to take into account inflationary factors from the time of [the breach] to the time of judgment." We disagree.

Plaintiff's "inflationary factor" is little more than a thinly veiled attempt to secure prejudgment interest. Under Illinois law, prejudgment interest may be awarded pursuant to an agreement between the parties or to a specific statutory provision (*Weidner v. Szostek*, 245 Ill. App. 3d 487, 492 (1993)), or where damages are liquidated or can be easily determined and calculated (*Marvel Engineering Co. v. Commercial Union Insurance Co.*, 118 Ill. App. 3d 844, 854 (1983)). None of those circumstances are present here. Therefore, plaintiff is not entitled to an award of prejudgment interest.

Plaintiff attempts to justify its "inflation factor" by citing to *Getschow*, 111 Ill. App. 3d at 533, and *Raines v. New York Central R.R. Co.*, 129 Ill. App. 2d 294, 302 (1970), *rev'd on other grounds*, 51 Ill. 2d 428 (1972), for the proposition that an adjustment due to inflation is proper when determining lost profits. These cases, however, are inapposite. *Getschow* does not affirmatively state that an inflationary adjustment is mandated in a lost profits award, but, rather, found that such an award under the facts of that case was not against the manifest weight of the evidence. *Getschow*, 111 Ill. App. 3d at 534. Moreover, the use of any inflationary adjustment there was not actually challenged on the appeal. *Getschow*, 111 Ill. App. 3d at 532-35. *Raines*, on the other hand, involved an award for a continuing physical injury, damages for which would persist into the future. *Raines*, 129 Ill. App. 2d at 298. The damages award in *Raines* sought to reduce the plaintiff's lifelong injury to a present value. By contrast, damages in the instant case were incurred over a fixed period and can, in principle, be determined. Thus, the present-value problem for future injury is not present in this case. Accordingly, plaintiff's reliance on these cases is misplaced.

In summary, we find that the trial court erroneously calculated plaintiff's damages by including plaintiff's fixed overhead expenses in its damages calculation. On remand, we direct the trial court to exclude the amount of fixed overhead expenses plaintiff would have incurred during the period of the breach from its damages calculation. See *Central Information*, 128 Ill. App. 3d at 1063 (trial court should award damages for the contract price less the award of expenses saved because the injured party is not required to perform; this does not require any determination as to the amount of overhead).

We note that the method the trial court originally used, determining a profit margin, is acceptable, so long as the trial court limits its consideration only to that portion of plaintiff's business directly attributable to defendant under the exclusive hauling agreement, rather than considering the profit margin for the whole of plaintiff's business.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

GEIGER and HUTCHINSON, JJ., concur.