ROYAL'S RECONDITIONING CORPORATION, INC., Plaintiff-Appellee, v. GARRY ROYAL, Defendant-Appellant.

First District (4th Division)   No. 1—96—2429

Opinion filed December 24, 1997.

Querrey & Harrow, Ltd., of Chicago (Victor J. Piekarski and Michael Resis, of counsel), for appellant.

Ronald G. Zamarin, of Des Plaines (Ronald G. Zamarin, of counsel), for appellee.

PRESIDING JUSTICE CERDA delivered the opinion of the court:
Defendant, Garry Royal, appeals from the lost-profits damages award entered in favor of plaintiff, Royal's Reconditioning Corporation, Inc., on plaintiff's breach-of-contract claim that was based on defendant employee's failure to give a 30-day notice of termination of employment. The main issue is whether the trial court erred in awarding profits lost for a period of years after the termination of employment when the contract provided for only 30 days' notice of termination.

## FACTS

Plaintiff is in the business of repairing and restoring the interior

and portions of the exterior of vehicles for used-automobile dealers throughout the Chicago area. Defendant was employed by plaintiff doing such repair work, but defendant quit in February 1990 without giving the 30-day notice of termination required by a written employment agreement:

> "This Agreement *** may be terminated at any time by either party upon giving the other thirty (30) days advance written notice of such termination."

The agreement further stated:

> "[Defendant] recognizes and acknowledges the list of Royal's customers and/or clients *** is a valuable, special and unique asset of Royal's business. [Defendant] will not, during or after the term of this Agreement, disclose the list *** or otherwise exploit such list."

Plaintiff filed a complaint seeking in part damages for breach of contract based on defendant's failure to give notice of termination and based on defendant's exploitation of plaintiff's customer list through seeking to do work for plaintiff's customers after termination of employment. The damages sought by plaintiff included (1) loss of future income from plaintiff's near-permanent customers and (2) damage to good will and to customer relationships.

On February 28, 1990, the trial court granted plaintiff's motion for a temporary restraining order enjoining defendant from soliciting 25 of plaintiff's existing customers and from using the word "Royal's" or "Royal" in any business providing service to automobile dealerships. The trial court found that plaintiff had demonstrated that defendant had succeeded in taking business from several of plaintiff's customers while employed by plaintiff or within a few days of resignation and that plaintiff had sufficiently alleged unfair competition.

Shortly thereafter, on March 7, 1990, the trial court dissolved the temporary restraining order and denied plaintiff's motion for a preliminary injunction. The trial court found that there was no protectable interest in the customer list. Defendant was ordered to state on all material containing his trade style or name: "Not associated or affiliated with Royal's Reconditioning Corp."

At the bench trial held in 1996, defendant testified that, after he terminated his employment with plaintiff, he contacted the same customers that he had been servicing as plaintiff's employee. He now was self-employed in the business of reconditioning the interiors of automobiles.

Kenneth Royal testified at the trial that the purpose of the 30-day-notice provision was to have plaintiff's customers timely serviced. Because defendant did not give the required notice, plaintiff was not

able to timely service its customers. He did not have someone to take over defendant's work. He would train new employees, and the training took on average four to six weeks. But he did not make any attempt to get back the customers from defendant because he did not have the time.

Royal further testified that, when defendant left, the type of reconditioning work performed by defendant was 50% of plaintiff's gross revenue. From the beginning of 1990 until defendant left, about one-third of the overall interior-reconditioning sales revenue was generated by work performed by defendant.

Lawrence John Kohn testified that he was a certified public accountant who was asked by plaintiff to calculate plaintiff's lost profits. The lost profits for the years 1990 through 1995 were $109,138. He conservatively determined lost profits of $78,828 for the years 1996 through 1999.

At the conclusion of the trial, on June 4, 1996, the trial court orally rejected the lost-profits calculations of $187,966 as not having been proven by a preponderance of the evidence. On the same date, the trial court entered an order finding that defendant breached the contract by failing to give 30 days' notice of termination and finding that this breach caused lost profits of $60,000.

Defendant filed a notice of appeal on July 5, 1996.

## DISCUSSION

Defendant argues on appeal that plaintiff's damages for the breach of the 30-day-notice provision were the losses sustained as a result of the absence of defendant as its employee for the 30 days only.

■ The reviewing court will not disturb the damages assessed by a trial court sitting without a jury unless its judgment is against the manifest weight of the evidence. *Sterling Freight Lines, Inc. v. Prairie Material Sales, Inc.*, 285 Ill. App. 3d 914, 917-18, 674 N.E.2d 948 (1996). A trial court's damages assessment is against the manifest weight of the evidence when it ignored the evidence or used an incorrect measure of damages. *Sterling*, 285 Ill. App. 3d at 918.

■ The proper measure of damages in a breach-of-contract action is the amount that will place the injured party in as satisfactory a position as she would have been in had the contract been performed. *Student Transit Corp. v. Board of Education*, 76 Ill. App. 3d 366, 369, 395 N.E.2d 69, 71 (1979). Lost profits can be recovered if plaintiff proves the loss with a reasonable degree of certainty, if defendant's wrongful act resulted in the loss, and if the profits were reasonably within the contemplation of defendant at the time the contract was

entered into. *Student*, 76 Ill. App. 3d at 369-70. The general principle is that the nonbreaching party to the contract may be entitled to the profits it would have gained had the breaching party performed. *Crown Life Insurance Co. v. American National Bank & Trust Co.*, 830 F. Supp. 1097, 1100 (N.D. Ill. 1993), *aff'd*, 35 F.3d 296 (7th Cir. 1994).

It is not necessary that the amount of loss be proven with absolute certainty. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 315, 515 N.E.2d 61 (1987). Being merely prospective, lost profits will to some extent be uncertain and incapable of calculation with mathematical precision. *Midland*, 118 Ill. 2d at 315-16. It is necessary that the evidence afford a reasonable basis for the computation of damages. *Midland*, 118 Ill. 2d at 316.

There are Illinois cases outside the employment context that support defendant's argument that the damages had to be limited to the length of the termination period. *Student Transit Corp. v. Board of Education*, 76 Ill. App. 3d 366, 395 N.E.2d 69 (1979); *Hentze v. Unverfehrt*, 237 Ill. App. 3d 606, 604 N.E.2d 536 (1992).

In *Student Transit*, 76 Ill. App. 3d 366, 395 N.E.2d 69, defendant board of education accepted and then rescinded plaintiff's bid for transportation of school children. The contract was subject to cancellation on 60 days' notice. After finding that defendant anticipatorily breached the contract, the court found that defendant could not have contemplated damages for lost profits for more than a 60-day period because that was the contractual period for cancellation. *Student*, 76 Ill. App. 3d at 370. The court held that plaintiff was entitled to damages only for loss of profits for the 60 days subsequent to defendant's notification to plaintiff that the contract was terminated. *Student*, 76 Ill. App. 3d at 370.

In *Hentze*, 237 Ill. App. 3d 606, 604 N.E.2d 536, a product-dealership contract was terminated in 60 days in accordance with the contractual terms. Because so much of plaintiff's sales at his store were derived from defendant company's products and because other competing manufacturers already had dealers in the area, plaintiff went out of business. The court found that defendants breached the contract and violated the implied obligation of good faith. *Hentze*, 237 Ill. App. 3d at 611. Plaintiff claimed that the consequential damages were lost profits for five years, but the court found that five years were not within the contemplation of the parties at the time of entering the contract. *Hentze*, 237 Ill. App. 3d at 612. Because of the 60-day termination provision, damages for lost profits exceeding 60 days could not have been contemplated. *Hentze*, 237 Ill. App. 3d at 612.

Numerous decisions from other jurisdictions concerning termination clauses in a variety of types of contracts also follow the reasoning that lost profits are limited to the amount that would have been earned during the contractual termination period. *E.g., Trimed, Inc. v. Sherwood Medical Co.*, 977 F.2d 885, 893 (4th Cir. 1992) (lost profits would be limited to those incurred during the six months following the breach of a product-supply contract's termination provision requiring six months' notice); *Machine Maintenance & Equipment Co. v. Cooper Industries, Inc.*, 634 F. Supp. 367, 371 (E.D. Mo. 1986) (plaintiff's lost-profit damages were limited to the 90-day termination period for a machinery distribution agreement); *Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.*, 607 F. Supp. 361, 369 (E.D. Pa. 1985) (plaintiff was only entitled to lost profits through the time that a manufacturing contract would have otherwise terminated pursuant to a 90-day notice provision); *Smalley Transportation Co. v. Bay Dray, Inc.*, 612 So. 2d 1182, 1186-91 (Ala. 1992) (the trial court should have awarded damages for 10 days instead of 7 years because the notice-of-cancellation period provided in a transportation-agency contract was 10 days); see also *Sierra Wine & Liquor Co. v. Heublein, Inc.*, 626 F.2d 129, 132 (9th Cir. 1980) (where liquor-distributorship contract was terminable upon reasonable notice, plaintiff was made whole by an award of six months' lost profits; court rejected plaintiff's argument that plaintiff was entitled to lost profits for an unspecified term); but see *Keystone Floor Products Co. v. Beattie Manufacturing Co.*, 432 F. Supp. 869, 879-80 (E.D. Pa. 1977) (although lost profits due to lost sales must be limited to the termination period, the termination period "does not necessarily and under any and all circumstances set the parameters for provable damages in this type of case" where, for instance, a summary termination could have a severe impact on the continuation of a well-established business).

■ We hold that, to put plaintiff in the position he would have been in had defendant given the required amount of notice of termination, plaintiff's lost-profits damages should have been limited to the contractual notice period of 30 days. The parties did not contemplate several years' lost profits as damages because the contractual period for notice of termination was only 30 days. Furthermore, there was no reason why plaintiff could not have competed with defendant for customers once it obtained a new employee to replace defendant. Awarding lost profits for a period longer than 30 days was an improper windfall for plaintiff. Based on the lost profits calculated for the first five-year period, we calculate that plaintiff should have been awarded only $2,500, and we modify the judgment accordingly.

In addition to lost profits, damages for the failure to give the

required amount of notice might arguably include the loss in value of a business as a going concern due to loss of customer goodwill. See *Trimed*, 977 F.2d at 893. Although plaintiff also alleged that the lack of adequate notice damaged the business's good will and customer relationships, plaintiff did not present evidence of the amounts of these types of damages.

We also hold that the damages award cannot be justified on the alternative basis as being compensation for defendant's breach of the contractual provision prohibiting exploitation of plaintiff's customer list. The names of the used-automobile dealerships are public information; defendant could have obtained the names without access to plaintiff's customer list. Therefore, defendant could not have exploited the list.

The judgment of the trial court is modified to award plaintiff $2,500 in damages, and the cause is remanded.

Affirmed as modified; cause remanded.

WOLFSON and BURKE, JJ., concur.