No. 1-05-2513

FIRST DIVISION
Filed: 9-17-07

ROBERT PANCOE,                              )        Appeal from the
                                            )        Circuit Court of
        Plaintiff-Appellee,                 )        Cook County.
                                            )
            v.                              )        No. 02 CH 4757
                                            )
GULZAR SINGH,                               )        Honorable
                                            )        Barbara Disko,
        Defendant-Appellant.                )        Judge Presiding.


JUSTICE ROBERT E. GORDON delivered the opinion of the court:

In 2002, Robert Pancoe sued Gulzar Singh for breach of an agreement calling for the

dissolution of an alleged joint venture between the parties. According to plaintiff, the underlying

venture was for the operation of Pan-Oceanic Engineering Co. (Pan-Oceanic), and N.K.

Contracting and Equipment Co. (N.K.). Following a bench trial, the circuit court of Cook County

entered judgment in favor of plaintiff and awarded damages in the amount of $92,959. Defendant

appeals, arguing, among other things, that (1) the trial court erred in (a) denying defendant's

motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure

(Code) (735 ILCS 5/2-615(e) (West 2004)), and (b) denying defendant's motion for judgment at

the close of plaintiff's case pursuant to section 2-1110 of the Code (735 ILCS 5/2-1110 (West

2004)); (2) the evidence was insufficient to establish the existence of the underlying venture; (3)

the trial court should not have allowed defendant's expert witness to testify in plaintiff's case, in

violation of Rule 213(f) (210 Ill. 2d R. 213(f)); (4) the trial court lacked jurisdiction to enter the

judgment; and (5) the court's damages award was not supported by the evidence. Plaintiff cross-

appeals, arguing that the trial court erred in awarding only $92,959 in damages rather than the $433,976.71 urged by plaintiff. For the reasons set forth below, we affirm the judgment of the circuit court, as modified.

BACKGROUND

In October 2002, plaintiff filed a three-count verified amended complaint against Singh, Pan-Oceanic and N.K. Counts I and II sought the involuntary dissolution of Pan-Oceanic and N.K., respectively, pursuant to the Illinois Business Corporation Act of 1983 (Act) (805 ILCS 5/1.01 *et seq.* (West 2004)). Count III of the complaint was against Singh for breach of contract. In June 2003, upon motion of defendants, the circuit court dismissed counts I and II against Pan-Oceanic and N.K. From this point forward, the case proceeded solely against Singh for breach of contract.

In count III of the amended complaint–the only remaining count–plaintiff alleged that he and defendant entered into an agreement "in or about 1998" to create and operate Pan-Oceanic, a construction company. Plaintiff further alleged that "[i]n or about the spring of 2000," he and defendant agreed to create and incorporate N.K., a small equipment rental company. According to plaintiff, the two men intended to operate Pan-Oceanic and N.K. "as a single venture" in which N.K. would serve as an equipment rental subcontractor on Pan-Oceanic's construction projects.

Plaintiff also alleged that in early 2001 he told defendant that he was dissatisfied with certain personnel decisions defendant had made, and plaintiff wanted to end his affiliation with the venture by the end of 2001. Plaintiff asserted that "[o]n or about September 17, 2001," he and defendant entered into a written agreement for the dissolution of the venture. A copy of this one-

2

page agreement, showing signatures by both parties, was attached to plaintiff's complaint. The agreement included, *inter alia*, the following stipulations: (1) any money the venture received for projects then under contract was to be deposited in Pan-Oceanic's checking account, (2) no new contracts were to be entered into on behalf of the venture, and (3) upon payment of all venture obligations, any amounts remaining in the checking account were to be disbursed equally to the two parties. The agreement was titled, "Memorandum of Agreement Between Gulzar Singh and Robert Pancoe re dis[s]olution of Venture known as Pan-Oceanic Engineering Co. and N.K. Contracting and Equipment Co. Dated this 17th Day of September, 2001 And covering all projects under contract as of this date."

According to the amended complaint, defendant breached this agreement in that, "since September 17, 2001, he has, without notice to Pancoe or Pancoe's knowledge or consent, bid for work on behalf of the Venture, failed to report payments on accounts receivable, failed to supply Pancoe with an accounting of the venture's profits and money, used the venture's funds for new business and revived a previously suspended contract." Plaintiff sought, as damages, the amount to which he was entitled "in accordance with the Agreement." Plaintiff added that, because he lacked access to the venture's books and records, he was uncertain, at that time, as to the precise amount that was due.

In his amended answer to count III of the complaint, defendant acknowledged the existence of Pan-Oceanic and N.K. but denied that he and plaintiff agreed to create the two companies. Defendant also denied that he and plaintiff intended to operate Pan-Oceanic and N.K. as a single venture. With regard to the agreement for dissolution of the venture, defendant

3

admitted that he signed the agreement in his individual capacity but stated that his signature was procured through fraud, misrepresentation and duress.

Defendant alleged, as an affirmative defense, that he signed the dissolution agreement under duress and the contract therefore was void and unenforceable. Defendant described the September 2001 meeting where the agreement was signed and claimed that, during this meeting, which was attended only by plaintiff and defendant, plaintiff physically threatened him. According to defendant, plaintiff told him that if he did not sign the agreement, plaintiff would "do something" to defendant that defendant would not like, and defendant would "totally disappear." Defendant stated that he signed the document "out of fear for his personal safety and well-being." Defendant alleged, in addition, that he could not read the document because plaintiff "deliberately placed his hand over the wording."

In March 2005 plaintiff filed witness disclosures pursuant to Supreme Court Rule 213(f) (210 Ill. 2d R. 213(f)). Plaintiff's disclosures included one independent expert witness, Christopher O. Ihejirika, who had formerly done accounting work for Pan-Oceanic. Among the expert witnesses disclosed by defendant was Dennis Steffens, who succeeded Ihejirika as Pan-Oceanic's accountant. According to defendant's Rule 213(f) disclosures, the subjects about which Steffens was to testify included (1) the total net profit from Pan-Oceanic's contracts that were outstanding at the time plaintiff's relationship with Pan-Oceanic ended, and the calculation of that profit, and (2) the interpretation of Pan-Oceanic's and N.K.'s financial statements and income tax returns. It is undisputed that Steffens was not named in plaintiff's Rule 213(f) disclosures.

No. 1-05-2513

On April 30, 2005, plaintiff served Steffens with a trial subpoena and a deposition subpoena. Steffens' deposition took place on May 12, 2005, with defendant present.

On May 31, 2005, just prior to the start of trial, defendant moved for judgment on the pleadings pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2004)). Defendant pointed to his previously asserted affirmative defense that he had signed the dissolution agreement under duress. Defendant noted that plaintiff never filed an answer to this affirmative defense. According to defendant, plaintiff's failure to respond constituted an admission of the truth of all facts alleged in the affirmative defense. Defendant contended, therefore, that because the contract was signed under duress, it was void and unenforceable, and judgment should be entered in his favor on the pleadings. The trial court denied the motion.

Plaintiff appeared as a witness in his own case.[1] A portion of plaintiff's testimony dealt with the execution of the dissolution agreement. Plaintiff stated, among other things, that he and defendant signed the agreement during a meeting on September 17, 2001, in plaintiff's office in Cicero, Illinois. According to plaintiff, he showed defendant a copy of the contract and the two of them "went over the provisions" and "mutually agreed" that those provisions were the basis of their agreement. Plaintiff denied making any threats against defendant to force him to sign the agreement. On cross-examination, plaintiff acknowledged that there was no written document

[1] Plaintiff's testimony began on May 31, 2005. Near the start of this testimony, plaintiff stated that he was 80 years old. Defendant, who testified that same day in plaintiff's case, stated that he was 42 years old. The meeting where plaintiff allegedly forced defendant to sign the agreement occurred four years earlier, when plaintiff was about 76 years of age and defendant was 38.

5

reflecting the underlying agreement between him and defendant to operate Pan-Oceanic and N.K. as a single venture.

On June 1, 2005, the second day of trial, plaintiff indicated that he intended to call defendant's expert witness, Dennis Steffens (Pan-Oceanic's accountant), to testify in plaintiff's case-in-chief. Defendant objected and orally moved to bar Steffens from testifying. Defendant noted that plaintiff, in his Rule 213(f) disclosures, did not disclose Steffens as a witness. Defendant complained that he was given no notice that plaintiff planned to call defendant's witness to testify in plaintiff's case, and defendant argued that Steffens therefore should be prohibited from so testifying. The trial court denied defendant's motion and allowed Steffens to testify in plaintiff's case. The parties and the court agreed that this testimony was not to exceed Steffens' deposition testimony.

Much of Steffens' testimony dealt with financial statements he had prepared for Pan-Oceanic. Steffens explained how he had arrived at some of the key figures set forth in the statements. He also explained how some of these figures related to a damages analysis he had prepared in the case at bar, at the request of defense counsel. In one portion of this damages analysis, Steffens calculated the actual profitability of the six Pan-Oceanic projects which were under contract in September 2001 when the dissolution agreement was signed, as compared with previous estimates of these projects' profitability.[2] According to Steffens, these jobs, whose future earnings were projected at about $22,000, actually ended up losing more than $152,000. Steffens

---

[2]Under the dissolution agreement, as noted, the funds received for these projects were to be deposited in Pan-Oceanic's checking account, whose balance, after all debts were paid, was to be disbursed equally to the parties.

also testified, under extensive questioning from plaintiff's counsel, regarding Steffens' assessment of overhead to these six projects.

At the conclusion of plaintiff's case, defendant filed a motion for judgment in his favor pursuant to section 2-1110 of the Code. According to defendant, plaintiff failed to prove the existence of a valid and enforceable contract and therefore failed to establish a *prima facie* case of breach of contract. Defendant noted that the agreement in question was for the dissolution of a "Venture" between plaintiff and defendant for the operation of Pan-Oceanic and N.K. Defendant argued that in order for plaintiff to prove the validity of this contract for dissolution of the venture, plaintiff must first establish the existence of the underlying venture itself. Defendant contended in his motion that plaintiff presented no evidence that this venture existed. The circuit court denied defendant's motion.

Also at the conclusion of plaintiff's case, defendant renewed his motion for judgment on the pleadings pursuant to section 2-615(e) of the Code. Defendant argued, as he had prior to trial, that plaintiff's failure to file an answer to defendant's affirmative defense of duress constituted an admission of all facts alleged in that defense. According to defendant, his defense that he signed the agreement under duress was established as a matter of law, and the contract thus was void and unenforceable. The circuit court denied this motion as well.

In his case-in-chief, defendant presented evidence in support of his affirmative defense of duress. Testifying in his own case, defendant described the September 2001 meeting where the dissolution agreement was signed. Defendant stated, as he had in his amended answer to plaintiff's complaint, that he signed the agreement under duress after plaintiff physically

7

threatened him. Defendant added that he could not see what he was signing because plaintiff blocked his view of the document. According to defendant, he signed what he thought was a blank piece of paper.

Besides adducing evidence in support of his affirmative defense of duress, defendant also presented evidence in support of his claim, in his section 2-1110 motion, that plaintiff failed to establish the existence of the underlying venture for the operation of Pan-Oceanic and N.K. Defendant testified in his case-in-chief that plaintiff was not an owner of either company and that defendant never had an agreement or understanding with plaintiff regarding the ownership or operation of Pan-Oceanic or N.K.

Also testifying in defendant's case was Dennis Steffens, defendant's expert witness who had testified in plaintiff's case. In his testimony in defendant's case, Steffens explained the steps he had taken in preparing a damages analysis in the case at bar. Portions of this analysis were based on financial statements Steffens had prepared for Pan-Oceanic. According to Steffens' damages analysis, the amount remaining to be split between plaintiff and defendant (under the dissolution agreement) totaled $54,847. Steffens testified that, based on this $54,847 figure, plaintiff's 50% share would be $27,424. Steffens added that he had no opinion as to whether plaintiff was entitled to any amount under the agreement.

In closing argument, plaintiff's counsel relied on relevant financial statements and Steffens' analysis to determine the amount of plaintiff's damages claim. Plaintiff adopted much of Steffens' analysis and approach, but disagreed with certain parts. Plaintiff expressly adopted, for example, Steffens' conclusion regarding the profitability of the projects which were under

contract at the time the dissolution agreement was signed. According to Steffens, these projects, whose future earnings were projected at about $22,000, actually ended up losing $152,310. Although plaintiff adopted this and other portions of Steffens' approach, he rejected the amount of overhead Steffens assessed (for the year ending February 28, 2002) against the projects which were under contract when the dissolution agreement was signed.

According to plaintiff, the total amount available to be split between plaintiff and defendant under the dissolution agreement was $867,953.43 (as opposed to Steffens' figure of $54,847). Plaintiff argued that his 50% share, therefore, was $433,976.71 (in contrast to Steffens' amount of $27,424).

Following closing arguments, defendant once again renewed his motion for judgment on the pleadings pursuant to section 2-615(e) of the Code and his motion for judgment pursuant to section 2-1110. The circuit court again denied these motions.

On June 28, 2005, the circuit court entered judgment in favor of plaintiff and against defendant in the amount of $92,959. In reaching this decision, the court concluded, contrary to defendant's assertions, that (1) plaintiff contributed money to the business as a capital contribution, and (2) plaintiff and defendant were operating the business as partners based on an oral agreement to that effect. The court also considered–and rejected–defendant's claim that he signed the dissolution agreement under duress. The court stated:

"The Court also heard testimony from Mr. Singh as to what happened at that September meeting. Mr. Singh said that they were both present, that Mr. Pancoe threatened him, that

Mr. Pancoe gave him a blank piece of paper and told him to sign it which he did. The Court finds that testimony incredible and not believable ***."

With regard to damages, the circuit court rejected plaintiff's figure of $433,976, noting that plaintiff failed to offer any expert testimony in support of this amount. According to the court, the testimony presented by plaintiff as to damages "was not the best." Rather than adopting plaintiff's damages amount, the court instead accepted "most of the figures that Mr. Steffens testified to" in his damages analysis. However, the court rejected Steffens' conclusion (which plaintiff's counsel had adopted during closing argument) that the projects under contract at the time the dissolution agreement was signed ended up losing $152,310. In the court's view, this figure was not "a proper amount." The court therefore "added [$152,310] onto the figures that Mr. Steffens testified to[, made] an adjustment for a ten percent retention," and divided the total amount in half, concluding that the correct figure for plaintiff's damages was $92,959.

Defendant appeals from the circuit court's order of June 28, 2005, entering judgment in favor of plaintiff. Defendant also appeals from the court's denial of defendant's motions (a) for judgment on the pleadings, (b) for judgment at the close of plaintiff's case, and (c) to bar plaintiff from calling Dennis Steffens to testify in plaintiff's case. Plaintiff cross-appeals, arguing that the trial court erred in awarding only $92,959 in damages rather than the $433,976.71 urged by plaintiff.

ANALYSIS

Defendant first argues that it was reversible error for the circuit court to deny his motion for judgment on the pleadings pursuant to section 2-615(e). This motion was predicated on

plaintiff's failure to respond to defendant's affirmative defense that the dissolution agreement was signed under duress. Defendant argues here, as he did below, that plaintiff's failure to respond meant that the allegations in the affirmative defense were admitted. Defendant argues further that these allegations, as admitted, establish the defense of duress as a matter of law. According to defendant, the dissolution agreement therefore was void.

The circuit court denied defendant's section 2-615(e) motion when it was first filed prior to the start of trial. The court again denied the motion when it was renewed at the close of plaintiff's case, and once again when it was renewed following closing arguments.

Under Illinois law, a party's failure to reply to an affirmative defense constitutes an admission of the facts alleged therein. *Mooney v. Underwriters at Lloyd's, London*, 33 Ill. 2d 566, 570 (1965); *Sobel v. Franks*, 261 Ill. App. 3d 670, 680 (1994); *State Farm Mutual Automobile Insurance Co. v. Haskins*, 215 Ill. App. 3d 242, 246 (1991). However, "if a defendant introduces evidence to support his affirmative defense, he is deemed to have waived a reply." *In re Marriage of Sreenan*, 81 Ill. App. 3d 1025, 1028 (1980); accord *State Farm*, 215 Ill. App. 3d at 246-47, citing *Mooney*, 33 Ill. 2d at 570. Here, defendant introduced such evidence in his case-in-chief. In describing the meeting in September 2001 where the dissolution agreement was signed, defendant testified that plaintiff ordered him to sign what defendant thought was a blank piece of paper. According to defendant's testimony, plaintiff threatened him that if he did not sign, plaintiff would "do something" to defendant that defendant would not like, and defendant would "disappear from this world." Defendant testified that he signed the paper because he was "nervous and feared for death." Because defendant in the case at bar presented

11

evidence in support of his affirmative defense, he has waived plaintiff's failure to file a reply. *Mooney*, 33 Ill. 2d at 570; *State Farm*, 215 Ill. App. 3d at 246.

Defendant next argues that the circuit court committed reversible error when it denied his motion for judgment pursuant to section 2-1110. In this motion, which was filed at the close of plaintiff's evidence, defendant argued, among other things, that plaintiff failed to establish the existence of the underlying venture. According to defendant, this failure was fatal to plaintiff's attempt to show that the dissolution agreement was a valid and enforceable contract. Defendant contended that, in order to demonstrate the validity of the dissolution agreement, it was necessary for plaintiff first to prove the existence of the venture that was to be dissolved. The trial court denied defendant's motion when it was first presented at the conclusion of plaintiff's case and again when defendant renewed the motion after closing arguments.

Section 2-1110 provides, in pertinent part:

"In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor. * * * If the ruling on the motion is adverse to the defendant, the defendant may proceed to adduce evidence in support of his or her defense, *in which event the motion is waived*." (Emphasis added.) 735 ILCS 5/2-1110 (West 2004).

In the case at bar, following the denial of defendant's section 2-1110 motion at the close of plaintiff's case, defendant presented, in his case, evidence in support of his claim that plaintiff failed to establish the existence of the underlying venture for the operation of Pan-Oceanic and N.K. Defendant testified that plaintiff was not an owner of either company and that defendant

12

No. 1-05-2513

never had an agreement or understanding with plaintiff regarding the ownership or operation of Pan-Oceanic or N.K.

Where a section 2-1110 motion is denied and the defendant thereafter presents evidence in his defense, the defendant "waives any complaint that the denial of the motion was error." *Evans & Associates, Inc. v. Dyer*, 246 Ill. App. 3d 231, 239 (1993); accord *Arians v. Larkin Bank*, 253 Ill. App. 3d 1037, 1047 (1993); 735 ILCS 5/2-1110 (West 2004). In this instance, because defendant presented evidence in his defense after his section 2-1110 motion was denied, he waived the motion.

Defendant next argues, independent of his section 2-1110 motion, that there was insufficient evidence adduced at trial to demonstrate the existence of the underlying venture. According to defendant, the circuit court's judgment in favor of plaintiff therefore was against the manifest weight of the evidence and must be overturned. This argument is in some respects the same as defendant's contention in his section 2-1110 motion that plaintiff failed to establish the existence of the venture. Both arguments are based on the premise that plaintiff was required to establish the existence of the venture.

Accordingly, before addressing defendant's claim that there was insufficient evidence to support the existence of the venture, we first must determine whether it was necessary for plaintiff to adduce such evidence. In other words, the initial question before us is whether plaintiff was required to establish the existence of the underlying venture.

The focus in the case at bar is the contract for dissolution of the venture, not the underlying agreement to set up the venture. Plaintiff's claim is that defendant breached the

13

agreement for *dissolution* of this venture by, *inter alia*, bidding for new work on behalf of the venture after the dissolution agreement was signed and failing to pay plaintiff the 50% share specified in the dissolution agreement. Plaintiff does not allege that defendant violated any of the terms of the alleged agreement to operate Pan-Oceanic and N.K. as a joint venture.

Notwithstanding the foregoing, defendant argues that plaintiff must establish the existence of the underlying venture "before an agreement to dissolve it may be enforced." In support of this proposition, defendant points to *Kennedy v. Miller*, 221 Ill. App. 3d 513 (1991). The dispute in *Kennedy* was over the amount the plaintiff was entitled to receive as his share of the profits from the parties' joint venture. In his attempt to determine this amount, the plaintiff sought, in the trial court, an accounting of the venture. In order to establish his right to an accounting, the plaintiff was required to prove the existence of the joint venture. The trial court found–and the appellate court affirmed–that the existence of the venture had been established and the plaintiff was entitled to an accounting. The appellate court ultimately held that the plaintiff was entitled to nearly $400,000 in profits and interest, plus additional interest to be determined on remand. *Kennedy*, 221 Ill. App. 3d at 525.

Unlike the case at bar, *Kennedy* did not involve a contract for dissolution of the venture . The basis for the plaintiff's claim in *Kennedy* was not a dissolution agreement or any other such separate contract. Rather, the basis of the claim was the venture itself. It follows that the plaintiff in *Kennedy* was required to prove the existence of the venture. See *D.S.A. Finance Corp. v. County of Cook*, 345 Ill. App. 3d 554, 559 (2003) (a party claiming breach of contract must establish, among other things, the existence of the contract). This does not mean, however, that

14

where a party sues for breach of an agreement to dissolve a venture, the party must prove, in addition to the existence of the dissolution agreement, the existence of the separate venture agreement as well. *Kennedy* provides no support for such a requirement.

Defendant also points to section 74.5 of the Corbin treatise on contracts (14 J. Nehf, Corbin on Contracts §74.5 (rev. ed. 2001)), which is titled "What Is Meant by the Term Impossibility?"[3] In citing to this section, defendant appears to argue that, if the venture in the case at bar does not exist, it is impossible to dissolve it, and the agreement for dissolution of the venture is therefore void.

Section 74.5 deals with the doctrine of impossibility of performance, under which contractual obligations are sometimes excused because performance would be impossible or impracticable. As an example, the treatise cites *Totten v. Houghton*, 2 S.W.2d 530, 535 (Tex. App. 1927), which held that a contractual obligation to install "six bookcases 4 feet wide *** between two windows separated by a bare space of 18 inches" was "impossible of performance." Several other examples of impossibility or impracticability of performance are included in section 74.5. *E.g.*, *Whelan v. Griffith Consumers Co.*, 170 A.2d 229, 230 (D.C. 1961) (holding that an oil delivery company was not liable in damages for the freezing of a farmhouse heating plant, where the company's failure to deliver fuel oil was caused by deep snow drifts, making delivery impracticable without "extreme or unreasonable difficulty or expense"). However, none of these examples appears to correspond to the situation presented in the case at bar: a contract for

---

[3]Defendant's citation to this source is to section 74.5 in volume 7 of the treatise. However, volume 7 contains only sections 27.1 to 29.12. Section 74.5 is in volume 14, which deals with impossibility. We presume that this is the volume defendant intended.

dissolution of a venture where the existence of the underlying venture is disputed. This is clearly the case with regard to the only two Illinois decisions cited in section 74.5, neither of which corresponds to the situation in the instant case.

In *Joseph W. O'Brien Co. v. Highland Lake Construction Co.*, 17 Ill. App. 3d 237 (1974), the plaintiff general contractor sued the defendant subcontractor for breach of a contract under which the defendant had agreed to install sewer pipe. The defendant claimed impossibility of performance as an affirmative defense. According to the defendant, his performance was rendered "impracticable because of extreme and unreasonable difficulty and expense unanticipated by defendant." *O'Brien*, 17 Ill. App. 3d at 240. The appellate court rejected this argument, largely because the plaintiff subsequently (albeit with some difficulty) installed the pipe that the defendant failed to install. The appellate court affirmed the circuit court's judgment in favor of the plaintiff. In *Felbinger & Co. v. Traiforos*, 76 Ill. App. 3d 725 (1979), the plaintiff real estate brokerage company entered into an agreement with the defendant, a beneficiary of a land trust, giving the plaintiff the exclusive right to sell or lease the subject property. Shortly after the execution of this agreement, and prior to any sale of the subject property, the mortgagee of the property threatened to foreclose its mortgage. As a result, the property was deeded to the mortgagee in lieu of foreclosure. The plaintiff sued the defendant for breach of the brokerage agreement, seeking $95,000 in commission and expenses. The circuit court dismissed the relevant portion of the complaint, and the plaintiff appealed. In response, the defendant argued that the mortgagee's institution of foreclosure proceedings had rendered the brokerage agreement "legally

impossible to perform." *Felbinger*, 76 Ill. App. 3d at 733. The appellate court rejected this argument and reversed the judgment of the circuit court.

Neither *O'Brien* nor *Felbinger* supports defendant's argument that the dissolution agreement in the case at bar is impossible of performance. First, both of these cases are inapposite to the instant case. In addition, the court in each case *rejected* the defendant's claim of impossibility or impracticability of performance.

Section 74.5 provides no support for the proposition that, where a party brings an action for breach of a dissolution agreement, and the existence of that agreement has been established, the party nevertheless is required, under Illinois law, to establish the existence of the underlying venture as well.

We find unpersuasive defendant's argument that plaintiff in the case at bar was required to establish the existence of the underlying venture. For purposes of our analysis, it is irrelevant whether there was sufficient evidence to show the existence of the venture.

Defendant next argues that the circuit court erred in allowing Dennis Steffens, defendant's expert witness, to testify in plaintiff's case. Defendant notes that plaintiff failed to disclose Steffens as an expert witness pursuant to supreme court Rule 213(f) (210 Ill. 2d R. 213(f)). Defendant argues that this failure to disclose was a violation of Rule 213(f), and the circuit court therefore should have barred Steffens from testifying. According to defendant, it was reversible error for the circuit court to allow this testimony.

Rule 213(f) provides, in pertinent part:

No. 1-05-2513

"Upon written interrogatory, a party must furnish the identities and addresses of witnesses who will testify at trial and must provide the following information:

***

"(2) *Independent Expert Witnesses*. *** For each independent expert witness, the party must identify the subjects on which the witness will testify and opinions the party expects to elicit." 210 Ill. 2d R. 213(f)(2).

The committee comments to Rule 213(f) state: "The purpose of this paragraph is to prevent unfair surprise at trial, without creating an undue burden on the parties before trial." 210 Ill. 2d R. 213(f), Committee Comments, at (March 28, 2002).

In the case at bar, it is undisputed that plaintiff did not disclose Steffens as an expert witness pursuant to Rule 213(f). We agree with defendant that this failure to disclose constituted a violation of the rule. This does not end our analysis, however. We still must determine whether the circuit court erred in allowing Steffens to testify in plaintiff's case. In making such a determination, we consider the following factors: " '(1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness.' [Citations.]" *McGovern v. Kaneshiro*, 337 Ill. App. 3d 24, 37 (2003).

"The exclusion or admission of evidence by the circuit court is reviewed under an abuse of discretion standard and will not be reversed absent an abuse of that discretion." *Kim v. Mercedes-Benz, U.S.A., Inc.*, 353 Ill. App. 3d 444, 452 (2004). "An abuse of discretion may be found only

18

where no reasonable man would take the view adopted by the circuit court." *Kim*, 353 Ill. App. 3d at 452.

With regard to the first factor, the surprise to the adverse party, we do not believe that defendant was surprised by Steffens' testimony in plaintiff's case. Steffens was defendants' expert witness. Defendant named Steffens in his Rule 213(f) disclosures and identified the topics on which Steffens would testify and the opinions expected to be elicited. In addition, defendant was present at Steffens' pretrial deposition. It is undisputed that Steffens' testimony in plaintiff's case did not exceed his deposition testimony. Moreover, a month before trial (about two weeks before Steffens' deposition), plaintiff issued a trial subpoena to Steffens.

For purposes of our analysis, the second and third factors are related. An examination of the nature of Steffens' testimony shows that it was not prejudicial. Steffens' testimony in plaintiff's case-in-chief was essentially the same as his testimony in defendant's case. In each instance, Steffens testified regarding his damages analysis and explained the bases for this analysis, including financial statements he had prepared for Pan-Oceanic. The only significant difference between Steffens' testimony in the two cases was that, in plaintiff's case, Steffens testified at length about his assessment of overhead to the six Pan-Oceanic projects that were under contract at the time the dissolution agreement was signed. In eliciting this testimony, plaintiff's counsel appeared to be laying the groundwork for his subsequent rejection, during closing argument, of the amount of overhead Steffens assessed against these projects. In his closing argument, plaintiff's counsel substituted his own calculations as to the proper amount of overhead to be assessed. These substitute calculations formed an important part of plaintiff's claim that he was

entitled to damages totaling $433,976.71, as opposed to the much lower estimate of $27,424 from Steffens.

The strength of Steffens' testimony (in plaintiff's case) regarding overhead can be seen in the circuit court's rejection of plaintiff's $433,976.71 damages figure. Virtually no weight was accorded this testimony by the circuit court.

The fourth factor, the diligence of the adverse party, is of minimal significance here. There is no indication that defendant was lax in sending his Rule 213 interrogatories to plaintiff. [4] Defendant also made timely objection to Steffens' testimony. Immediately upon plaintiff's giving indication that he intended to call Steffens, defendant objected. Defendant also registered a standing objection to this testimony.

With regard to the sixth factor, plaintiff did not include Steffens in his Rule 213(f) disclosures. However, this does not necessarily indicate a lack of good faith on plaintiff's part. Though plaintiff failed to disclose Steffens, plaintiff nevertheless issued a trial subpoena to Steffens. As a result of this subpoena, defendant received notice, however deficient by Rule 213 standards, that plaintiff might call Steffens to testify. In addition, while not condoning plaintiff's Rule 213 violation, we note that–for purposes of determining whether plaintiff acted in good

---

[4]Following defendant's submission of his Rule 213(f) disclosures, plaintiff filed a motion *in limine* to strike and bar, alleging, among other things, that the disclosures were untimely. In his response, defendant argued that his disclosures were filed in compliance with a discovery schedule that was included in a March 1, 2005, court order and therefore were timely. The circuit court granted plaintiff's motion to bar with regard to some of the witnesses disclosed by defendant, but denied plaintiff's motion with regard to Steffens. No reasons for these decisions were included in the court's order.

faith–plaintiff might have concluded that, because Steffens was defendant's witness, it was unnecessary to disclose him.

Our analysis of these six factors, particularly the first three, leads us to conclude that the circuit court did not abuse its discretion in allowing Steffens to testify in plaintiff's case. It cannot be said that no reasonable person would take the view adopted by the circuit court in this instance. See *Kim*, 353 Ill. App. 3d at 452.

Notwithstanding the foregoing, defendant argues that the admission of Steffens' testimony in plaintiff's case resulted in both surprise and prejudice. According to defendant, Steffens was the only damages witness in plaintiff's case. If Steffens had been barred from testifying, defendant argues, then plaintiff would have been unable to establish his case for breach of contract, and no judgment would have been entered against defendant. It is on this basis that defendant contends he was prejudiced. With regard to surprise, defendant appears to argue that–although Steffens was defendant's expert witness, and although plaintiff issued a trial subpoena to Steffens–defendant nevertheless was surprised in that he did not expect Steffens to testify as plaintiff's expert.

We find these arguments unpersuasive. We have already concluded that defendant was neither prejudiced nor surprised by the admission of Steffens' testimony in plaintiff's case. The trial court did not abuse its discretion in allowing this testimony. It follows that reversal, on this basis, is unwarranted.

Defendant next raises two arguments related to the damages awarded in this case. In the first of these arguments, defendant contends that the circuit court lacked jurisdiction to enter the

judgment. Defendant points to the dissolution agreement, under which, according to defendant, the assets of the alleged venture were to be placed in Pan-Oceanic's checking account, and these assets, after all debts were paid, were to be disbursed to the parties. According to defendant, it was from these assets that plaintiff's 50% share was to be paid, as damages, in this case. Defendant therefore argues that the circuit court's award of $92,959 to plaintiff, as his 50% share, amounted to an order directing Pan-Oceanic and N.K. (the parties to the alleged venture) to pay this amount to plaintiff. Defendant notes, however, that neither Pan-Oceanic nor N.K. was before the court. Defendant contends that the circuit court had no jurisdiction to require such payments from Pan-Oceanic or N.K., and the court's judgment therefore is void for lack of jurisdiction.

Defendant's argument is based on the premise that the circuit court's judgment required Pan-Oceanic and N.K. to pay the $92,959 damages amount to plaintiff. However, it is undisputed that the judgment was against defendant personally. The judgment required *defendant* to pay the damages. The court did not, and could not, order Pan-Oceanic or N.K. to pay this amount. There is no jurisdictional defect.

Notwithstanding the foregoing, defendant contends that the circuit court lacked jurisdiction to enter its judgment. Defendant cites *Morey Fish Co. v. Rymer Foods, Inc.*, 158 Ill. 2d 179 (1994), in support of this contention.

In *Morey Fish*, the plaintiff, Morey Fish Company, filed suit in the circuit court of Cook County seeking to enjoin enforcement of a federal district court judgment against it. Morey Fish Company had never been a party in the federal case. The federal judgment initially was entered against Morey Fish House, which *was* a party. The federal court subsequently issued a modified

22

order entering judgment against Morey Fish Company, even though Morey Fish Company was never served and never appeared in the federal district court proceedings. It was this modified order that was the subject of Morey Fish Company's suit in Illinois state court.

The circuit court of Cook County dismissed Morey Fish Company's complaint for injunctive relief, and the appellate court affirmed. Our supreme court reversed, concluding that the federal court judgment was void against the plaintiff because the federal district court never established personal jurisdiction over the plaintiff. The difficulty, the supreme court noted, was that the rights of "an unnamed party who was never served and who never appeared in the Federal district court proceedings" were nevertheless "directly adjudicated" in those proceedings. *Morey Fish*, 158 Ill. 2d at 189.

*Morey Fish* is distinguishable from the case at bar. In *Morey Fish*, the federal court actually entered judgment against the plaintiff, even though the plaintiff was never before the court. In the case at bar, by contrast, the circuit court did not enter judgment against Pan-Oceanic or N.K. It entered judgment only against defendant personally. It cannot be said that the circuit court in the instant case "directly adjudicated" the rights of Pan-Oceanic and N.K..

Defendant's argument that the circuit court lacked jurisdiction to enter the judgment in the instant case is unpersuasive.

Defendant's second argument relating to damages is that the damages amount awarded by the circuit court is not supported by the evidence. Defendant points to Steffens' assertion that the projects under contract at the time the dissolution agreement was signed ended up losing $152,310, rather than netting a profit of $22,087, as had been projected. Defendant notes that the

circuit court rejected Steffens' $152,310 loss figure, and instead added this amount to Steffens' other figures to arrive at a damages total of $92,959. According to defendant, there was no evidentiary basis for the circuit court's rejection of the $152,310 loss figure. Defendant therefore argues that, if damages are awarded to plaintiff, the amount should be reduced to the $27,424 total that Steffens calculated as plaintiff's 50% share.

"A trial judge's award of damages will not be reversed unless it is clearly erroneous or against the manifest weight of the evidence." *B&Y Heavy Movers, Inc. v. Fluor Constructors, Inc.*, 211 Ill. App. 3d 975, 984 (1991); see also *Royal's Reconditioning Corp. v. Royal*, 293 Ill. App. 3d 1019, 1022 (1997) (reviewing court will not disturb the damages assessed by a trial court sitting without a jury unless its judgment is against the manifest weight of the evidence). "A trial court's damages assessment is against the manifest weight of the evidence when it ignored the evidence or used an incorrect measure of damages." *Royal's Reconditioning Corp.*, 293 Ill. App. 3d at 1022.

In explaining the damages award in the case at bar, the trial judge stated, in pertinent part:

"The Court is going to accept most of the figures that Mr. Steffens testified to on Exhibit No. [23] except for the $152,310 that was entered as a loss for future earnings upon future projects. The Court does not believe that that was a proper amount. That was not bor[n]e out by other testimony, Mr. Steffens, or by the exhibits[,] so that amount is going to be added onto the figures that Mr. Steffens testified to."

The judge stated, in effect, that the $152,310 figure was not consistent with other evidence in the case.

Our review of the record has revealed no such other evidence that would contradict this figure. In both plaintiff's and defendant's cases, Steffens testified to this figure and explained how he had reached it. Plaintiff did not contradict the $152,310 figure, nor did he introduce any expert testimony challenging this amount. Indeed, in his closing argument, plaintiff's counsel mentioned the figure in his damages calculations and adopted it. Counsel stated:

> "Additionally, with respect to the ongoing projects, Mr. Steffens testified that he calculated the future loss on those projects as $152,310.
>
> This is contained in Defendant's Exhibit 28, which is the report that Mr. Steffens himself prepared. We accept it. We looked at the financial statements[,] and his calculation is supported by the evidence. As a result, we reduced the amount that will be due under paragraph 1 by $152,310."

While closing argument is not evidence, this passage is nevertheless instructive. It illustrates the positive approach that plaintiff took at trial toward this portion of Steffens' analysis.

The trial judge's rejection of Steffens' $152,310 loss figure was against the manifest weight of the evidence. See *Royal's Reconditioning Corp.*, 293 Ill. App. 3d at 1022. The amount of damages which should have been awarded is $27,424, which is what the damages would have totaled, absent the judge's rejection of Steffens' $152,310 loss figure. Accordingly, we modify the judgment of the circuit court to award plaintiff $27,424 in damages.

We have carefully reviewed the remaining arguments raised by defendant and find that they would not affect the conclusion we reach here. For this reason, we find it unnecessary to address those arguments in this opinion. In addition, in affirming the circuit court's damages

award in the modified amount of $27,424, we necessarily reject plaintiff's cross-appeal, which we also carefully reviewed. As noted, in his cross-appeal, plaintiff argues that the damages amount should have been $433,976.71.

## CONCLUSION

The judgment of the circuit court is modified to award plaintiff $27,424 in damages, and the cause is remanded.

Affirmed as modified; cause remanded.      .

McBRIDE, P.J. and GARCIA, J., concur.