CHICAGO TITLE AND TRUST COMPANY, Trustee, Plaintiff-Appellee, *v.* HEDGES MANUFACTURING CO., Inc. *et al.*, Defendants-Appellants.

Second District    No. 79-499

Opinion filed December 9, 1980.

Karlen R. Covey, of Covey, Covey & Waggoner, of Crystal Lake, for appellants.

Joseph Condon, of Joslyn & Green, of Crystal Lake, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:
This is an appeal from the judgment of the circuit court of McHenry County awarding the plaintiff the sum of $58,370.70 for breach of covenant under a lease.

The plaintiff was the owner in trust of an industrial building and the defendant, Hedges Manufacturing Co., Inc., and its guarantor, Richard Moellering, entered into a lease of that property for a period of five years from January 1, 1973, to December 31, 1977, at a net rental of $1,685 per month. (Certain other operating expenses were also assumed by the lessor.) The lease contained a clause allowing the landlord to relet the premises upon abandonment by the tenant and a "re-entry" clause upon default in the rent or other breach of covenant by the tenant. Richard Moellering, guarantor of the lease, testified that in November of 1974 he went to see Mrs. Geschke, beneficial owner of the property, and told her that his company was in financial trouble and it was necessary for them to move out of the building as they could no longer afford the rent. Moellering testified that Mrs. Geschke replied that she was sorry and that she would work with him to find a new tenant. She confirmed this conversation but said she told Moellering she would hold him to the obligation of the lease. Hedges Manufacturing Co. abandoned the premises that same month. Moellering continued to pay the rent until June 1975, at which time he ceased paying rent, contending that Mrs. Geschke was not cooperating with him in trying to lease the building to a new

tenant and that she had changed the locks on the building, denying him access. Thereafter Moellering ran an advertisement in the Chicago Tribune and referred the responses to Mrs. Geschke, but he did not hear anything further from her. He testified that because he had not heard from Mrs. Geschke with regard to any developments as to reletting the premises, he hired Allan Schimke, a broker, to find a tenant. Schimke testified he asked permission of Mrs. Geschke to put a sign on the outside of the building but she refused permission to do so. Schimke testified that he then placed signs advertising the availability of the building on the inside of the windows, but upon entering the building later he found these signs lying on the floor in a crumpled condition. He testified he had several prospects for renting or buying the building but Mrs. Geschke was not interested. According to his testimony he had an offer to buy the building, but Mrs. Geschke said she was no longer interested in selling it, but had decided to keep it as an investment and lease it.

Schimke testified that in May 1976 he showed the building to a prospect, Chromacorp, Inc. Schimke asked Mrs. Geschke for the floor plans to show to Chromacorp, Inc., and she told him she could not lease the building because she had sold it to someone else. After that Schimke did not make any further effort to rent or sell the building. On cross-examination Schimke admitted he had never presented an offer to rent the building for a specific dollar amount to Mrs. Geschke. He did not have a written lease offer from Chromacorp, Inc., at the time Mrs. Geschke told him the building was sold. In response to a question by the court, Moellering said that other than extending his agreement with the broker, Schimke, he had done nothing to find a tenant for the building after he stopped paying rent in June 1975. Moellering said that he felt that Mrs. Geschke had a responsibility to find someone else—that is, that she had a responsibility to mitigate the damages.

After hearing the testimony and arguments of counsel, the trial court awarded a judgment to the plaintiff in the amount of $58,370.70. This amount appears to be comprised of $40,440 of unpaid rent (24 months from June 1975 to June 1977, when the building was sold) plus approximately $7,000 in specified miscellaneous charges payable by the tenant under the lease, including taxes, utilities, maintenance and interest.

The defendant contends in this appeal that the amount of the judgment is excessive because (a) the landlord failed in its duty to mitigate the damages by making an effort to seek a new tenant and by failing to cooperate with the defendant's efforts to do so and (b) in actually refusing an offered tenant in May of 1976 on the ground that the building had been sold.

The law in Illinois and in many other jurisdictions is conflicting on the extent to which a landlord must mitigate damages upon abandonment

of leased property. There is no statutory provision covering this question and the case law is divided into essentially three groups. One group, consisting primarily of older decisions, reflects the orthodox view that a landlord is under no obligation whatsoever to re-rent property in order to lessen the abandoning tenant's liability. (*Rau v. Baker* (1905), 118 Ill. App. 150; *Scanlan v. Hoerth* (1909), 151 Ill. App. 582, 585-86; *Harmon v. Callahan* (1919), 214 Ill. App. 104, 108-09 (unless lease expressly requires landlord to re-let); *Hirsch v. Home Appliances, Inc.* (1926), 242 Ill. App. 418, 422-26.) The only explanation offered for this rule is that a tenant should not be allowed to impose such a duty on the landlord by his own wrongful act of abandonment.

Cases in the second group recognize the general contract rule of mitigation that a party who has been wronged by a breach may not sit idly by and allow damages to accumulate. These decisions suggest that a landlord must exercise reasonable diligence in finding a substitute tenant and may not arbitrarily refuse a suitable subtenant if one is offered. (*Westside Auction House Co. v. Connecticut Mutual Life Insurance Co.* (1900), 186 Ill. 156; *Resser v. Corwin* (1897), 72 Ill. App. 625, 629; *Hinde v. Madansky* (1911), 161 Ill. App. 216, 220; *McCormick v. Loomis* (1911), 165 Ill. App. 214, 216-17; *Contratto v. Star Brewery Co.* (1911), 165 Ill. App. 507, 511; *Sears v. Curtis* (1914) (Abst.), 189 Ill. App. 420; *Marling v. Allison* (1919), 213 Ill. App. 224, 226-27.) Most of the cases in this group rely on language in either *Resser* or *Westside Auction House*. In *Resser*, the court formulated the following standard for measuring damages:

> "If appellant was entitled to recover, his measure of damages would be, the rent agreed to be paid, less whatever he could have made out of the land by the use of due diligence after it came into his possession. In other words, he could only recover such sum as would make him whole." (72 Ill. App. 625, 629.)

In *Westside Auction House*, the supreme court said:

> "Upon the abandonment of the leased premises by the tenant it was the right and duty of the landlord to take charge of the premises, preserve them from injury, and, if it could, re-rent them, thus reducing damages for which the lessee was liable." 186 Ill. 156, 161.

The final and most recent group of cases holds that the landlord does not have a general obligation to mitigate but only a duty to accept a suitable subtenant when offered. *Reget v. Dempsey-Tegeler & Co.* (1968), 96 Ill. App. 2d 278, 281; *Scheinfeld v. Muntz TV, Inc.* (1966), 67 Ill. App. 2d 8, 14-17; *Wohl v. Yelen* (1959), 22 Ill. App. 2d 455, 461-64.

In the *Yelen* case, the landlord agreed, after the tenant vacated the premises, to allow the tenant to relet. The tenant placed an advertisement in the paper and as a result secured a subtenant. Upon offering the sub-

tenant to the landlord, the landlord refused to accept this tenant and sued for the rent due under the terms of the lease. The court recognized a duty on the landlord to mitigate to the extent that he was obligated to accept a suitable subtenant if one was offered by the original tenant. In *Scheinfeld*, there was an agreement by the landlord to accept Breuer Electric Mfg. Co. as a subtenant, after the tenant, Muntz, moved out of the building, but the landlord specifically provided that there would be no further subleasing. Breuer, after a time, found the building unprofitable to occupy and sought to sublet the building to another tenant, Calumet Manufacturing Co., offering to make up the difference in rent since the rent to be paid by Calumet was lower. The landlord refused to accept Calumet as a subtenant and confessed judgment against Muntz, who, in turn, confessed judgment against Breuer. It was shown by affidavits that Breuer was unable to secure another tenant and that Calumet was a reliable tenant. The court, following *Yelen*, held that since Calumet was apparently a suitable tenant, the landlord had a duty to mitigate damages by accepting the offer or reducing the obligation of Breuer accordingly. After confirming the landlord's right to hold the tenant under the lease to his lease obligation, the court said:

> "But when the duty to mitigate is raised by the tender of a suitable sublessee, the option of the landlord lies between consenting to the sublease or crediting the tenant with the amount which would have been paid by the sublessee had he been accepted. The landlord may not arbitrarily reject a suitable sublessee and yet continue to hold the tenant liable for the whole rental in default." 67 Ill. App. 2d 8, 17.

However, in *Reget*, where the tenant moved out and, upon being sued for rent, defended on the ground that he had received some inquiries to rent the premises for an amount equal to or exceeding the lease rental, and had turned these inquiries over to the landlord, the court held that this was not a sufficient showing of an offer of a suitable tenant to reduce or cancel the tenant's obligation. While we are inclined to follow the rule as to mitigation set out in *Yelen* and *Muntz TV, Inc.*, where a suitable tenant is offered by the original lessee, we think the burden of proof is on the tenant to show that the substitute tenant is reasonably suitable. It is not the duty of the landlord either to seek out a suitable tenant or to make investigations as to the suitability of a prospect referred to him by the tenant. *Resser v. Corwin* (1897), 72 Ill. App. 625; *Reget v. Dempsey-Tegeler & Co., Inc.* (1968), 96 Ill. App. 2d 278.

In this case, however, it appears that the landlord announced in May 1976 that she could no longer lease the building because she had sold the building to someone else.

Schimke, defendant's broker, testified without contradiction that in

May 1976 he had secured an offer to rent the building from Chromacorp, Inc. Schimke stated he went to Mrs. Geschke's office and told her that he had found a tenant and asked her for the floor plans so that they could look them over and see what they could do with the building. He further testified that she told him she could no longer lease the building as she had sold the building to someone else. He stated he did not submit a written lease from Chromacorp, Inc., to Mrs. Geschke because there didn't seem to be any point in preparing a lease when she had told him the property was sold and she would no longer lease it. Mrs. Geschke, when called as a witness by her counsel, did not deny Mr. Schimke's testimony recited above.

The defendant testified that he felt the plaintiff had a duty to mitigate damages and she had not cooperated in any way in doing so. Mrs. Geschke testified that the defendant or his agent had never presented her with a written lease for the building for a fixed term at a fixed amount. She denied she had torn down the signs affixed to the inside of the building by the defendant's agent offering the building for sale or lease. She also denied that she had prevented the defendant's access to the building by changing the locks.

The judgment for unpaid rent was apparently based on a default for the period from June 1975, when Moellering ceased paying the rent, to June 1977, when the building was actually sold.

The defendant contends that even if we follow the rule of mitigation of tenant's damages set out in *Yelen* and *Muntz TV, Inc.*, and hold that the landlord has no general duty to mitigate damages, the period when liability for rent ceased should be from May 1976 rather than June 1977, when the building actually changed hands. Based on the testimony of the defendant's agent, Schimke, a tenant was offered to the plaintiff in May 1976 and if accepted would have mitigated the damages as of that date. The effort to do so was frustrated by the plaintiff informing the defendant's agent that there was no use in showing the tenant the floor plans because she could not rent the building since it had been sold. Even conceding, the defendant argues, the validity of the rule of mitigation set out in *Yelen* and *Muntz TV, Inc.*, the landlord has a duty to cooperate and not to frustrate the tenant's attempt to reduce the damages. The defendant argues that the plaintiff should not have the right to hold the tenant responsible for further rent after frustrating his attempt to secure another tenant and informing him that the building was sold. The defendant further argues he should be able to accept the landlord's word as to the sale of the building and after that announcement was made the tenant should have no further responsibility for the rent. While the defendant himself did not testify on this point, Mrs. Geschke did not contradict the broker's testimony that he was informed by her that the

building had been sold in May 1976 and that as a consequence he ceased to try to find another tenant. We agree with the defendant's position in this regard.

The plaintiff, however, argues that the testimony of the broker indicated that he never presented a written lease to her and, therefore, he did not fulfill the requirements of presenting a suitable tenant to the plaintiff in May 1976 and thus that date is not significant as to mitigation. It appears the trial court accepted this argument and held that it was not proved by the defendant that he had ever made a specific tender of a suitable tenant. This must be assumed since the trial court awarded damages from the initial default in June 1975 up to June 1977, when the building actually was sold and changed hands.

■■ We are of the opinion that when the landlord announced she had sold the property and that she could therefore not lease it to a subtenant, the defendant was from that time relieved of the duty to find a suitable subtenant. The law does not require the doing of a useless thing. (*Anderson v. Pan American Motors Corp.* (1924), 232 Ill. App. 27.) The failure to perform is excused where prevented by the other party to the contract. *Pfaff v. Petrie* (1947), 396 Ill. 44, 56.

In the case at hand it was useless for the defendant to find a suitable subtenant after the landlord had announced she would no longer accept a subtenancy without regard to the suitability of the subtenant if offered.

■■ Where one party to a contract shows that the other party has deliberately made it impossible for the contract to be performed by some act of his done prior to the time that performance was to be made or had, such act in law amounts to a prevention of performance. It is also the law that where one contracting party can show that the other prevented his performance of the contract, it is to be taken as *prima facie* true that he would have accomplished it if he had not been so prevented. *Levy & Hipple Motor Co. v. City Motor Cab Co.* (1912), 174 Ill. App. 20, 25.

The landlord's announcement that she would no longer accept a subtenant thus relieved the tenant of further effort to secure a suitable subtenant. This cause is therefore remanded to the trial court to reduce the judgment for rent, taxes and other expenses incurred subsequent to May 1976.

The judgment of the circuit court of McHenry County is affirmed in part, reversed in part and remanded for the purpose of computing proper damages in accordance with this opinion.

Affirmed in part; reversed in part and remanded with directions.

LINDBERG and VAN DEUSEN, JJ., concur.