*In re* ESTATE OF JOSEPH E. CONKLIN, Deceased—(Towne Realty, Inc., Claimant-Appellee, *v.* James Oliver Conklin, Ex'r of the Estate of Joseph E. Conklin, Deceased, Respondent-Appellant).

Fourth District    No. 4—82—0729

Opinion filed July 20, 1983.

Robert S. O'Shea, of Pree & Pree, of Springfield, for appellant.

Mark Rabin, of Springfield, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

This appeal has been taken by decedent's executor from an order of the circuit court of Sangamon County, sitting in probate, which allowed the claim of Towne Realty, Inc. (claimant), against the estate of the decedent.

An agreed statement of facts has been submitted in lieu of a record pursuant to Supreme Court Rule 323(d) (87 Ill. 2d R. 323(d)). In summary it indicates that the claimant operated an apartment building in Springfield known as Lincoln Towers Center and that decedent leased an apartment therein for a term of one year commencing September 1, 1980. A copy of the lease was received into evidence. The decedent died in March 1981 and shortly thereafter his executor removed his furniture and personal effects from the apartment; decedent's rent was fully paid up to the date of his death and he was in full compliance with all the covenants in the lease. The apartment was eventually rented in August 1981; other apartments in the same building had been rented by claimant's manager before that date. The judgment on the claim was for rent due from the time of decedent's death until claimant obtained a new tenant after giving credit for a portion of the security deposit made by decedent.

Two issues are presented for our consideration: (1) whether decedent's death terminated the lease as a matter of law, and (2) assuming *arguendo* that it did not, whether the claimant was under a duty to mitigate damages.

As to the first issue, there appears to be a dearth of authority in this State. The question arose obliquely in *Collins v. Northern Trust Co.* (1965), 63 Ill. App. 2d 83, 211 N.E.2d 608. In that case the decedent had entered into a one-year lease for an apartment and died during the term. The landlord filed a claim against the estate and the trial court entered judgment in favor of the landlord for the entire rent from decedent's death to the expiration of the lease. The appellate court reversed, holding that certain contingencies in the lease, such as fire, explosion, or other casualty, would abate the rent and therefore judgment for the entire amount was improper. The decision turned largely on the mechanics of making claims for rent while contingencies existed and apparently the question of termination of the lease was not argued to the court. In the instant case, no such contingencies are present since the claim was not made until after the expiration of the lease by its own terms.

■■ ■ The general rule is found in 51C C.J.S. *Landlord and Tenant* sec. 92 (1968). It is there stated that a lease is not terminated by

the death of the lessor or the lessee unless the rule is altered by statute or by the terms of the lease; the latter may be either expressly stated or the nature of the lease and the peculiar qualifications of the lessee may make the lease personal to the lessee and thus operate to terminate it at his death.

In the case at bar the executor has cited a number of cases from sister jurisdictions, all of which fall under the latter category of the C.J.S. rule stated above, and thus are distinguishable. In *Warnecke v. Estate of Rabenau* (Mo. App. 1963), 367 S.W.2d 15, the lease was for office space to be used for the specific purpose of the business of the lessee, a public accountant; the term "lessee" was defined to include servants, employees, and clients, but did not include successors, assigns, heirs, or personal representative. The Missouri court concluded that the terms of the lease made it personal to the lessee and thus terminated on his death. The court acknowledged the general rule that death does not ordinarily terminate the lease. It quoted from an earlier Missouri case, *McDaniel v. Rose* (Mo. App. 1941), 153 S.W.2d 828, holding that the usual presumption is that the parties intend to bind their personal representatives unless the acts to be performed are of a strictly personal nature or depend upon the continued existence of a particular person or of a particular condition or status which goes to the very essence of the contract. In *McDaniel* the lease was for advertising signs for the decedent's business, a drugstore, which could only be conducted by the decedent.

Two later Missouri cases (*In re Estate of Church* (Mo. App. 1973), 504 S.W.2d 214; *In re Estate of Lewis* (Mo. App. 1973), 492 S.W.2d 385) distinguished *Warnecke*. In both cases residential leases were involved and provided that they were binding upon the heirs, executors, administrators, successors and assigns of both parties. The court held that this language was clear and unambiguous and that the leases were not personal.

■ In our opinion the lease in the instant case falls well within the ambit of the general rule of nontermination; it has no specific provision regarding termination by death; it is an ordinary residential lease; in fact, it is a printed form presumably used for all tenants of the claimant; and there is nothing in the record to indicate that the decedent possessed personal qualifications or characteristics which might make the lease personal to him. Furthermore, it is specifically made assignable with the consent of the lessor and is binding upon the successors, assigns, personal representatives and legal representatives of the parties. The executor argues that these provisions made the lease sufficiently restrictive so that it becomes personal to the les-

see. We do not agree. These are standard provisions in nearly all leases. Their absence would create a stronger argument in favor of the personal nature of the lease. *Warnecke; McDaniel.*

■ The question of a lessor's duty to mitigate damages appears unsettled in this State. (See generally Bulkeley, *Does a Landlord Have a Duty to Mitigate Damages When a Tenant Abandons During the Lease?* 68 Ill. B.J. 588 (1980).) The three lines of authority are well summarized in *Chicago Title & Trust co. v. Hedges Manufacturing Co.* (1980), 91 Ill. App. 3d 173, 414 N.E.2d 232: (1) no obligation whatever; (2) the general contract rule that the wronged party may not sit idly by and allow damages to accumulate; and (3) no general obligation to mitigate but only a duty to accept a suitable subtenant when offered.

The executor argues that the common thread throughout all of the prior authority is a wrongful abandonment by the tenant and that such was not the case here; the abandonment was involuntary, the result of the death of the tenant. From this premise, he deduces that an obligation is imposed on the landlord to mitigate. We fail to discern the difference. Whether the abandonment finds its origin in the wrongful act of the tenant or in his involuntary act of death, it is not the result of anything done by the landlord, and he stands deprived of his rent to which he is entitled under the contract which, as we have already held, was not terminated by the tenant's death.

■ We believe that the third line of cases summarized in *Chicago Title & Trust Co.* and accepted by that court as the most recent authority represents the better view:

> "While we are inclined to follow the rule as to mitigation set out in *Yelen* and *Muntz TV, Inc.*, where a suitable tenant is offered by the original lessee, we think the burden of proof is on the tenant to show that the substitute tenant is reasonably suitable. It is not the duty of the landlord either to seek out a suitable tenant or to make investigations as to the suitability of a prospect referred to him by the tenant. *Resser v. Corwin* (1897), 72 Ill. App. 625; *Reget v. Dempsey-Tegeler & Co., Inc.* (1968), 96 Ill. App. 2d 278." 91 Ill. App. 3d 173, 177, 414 N.E.2d 232, 235.

The record here is devoid of any indication that the executor sought out or presented to the claimant any prospect as a subtenant.

In the conclusion of its brief before this court the claimant asks that we remand to the trial court for the assessment of attorney fees provided in the lease. Two insuperable obstacles lie in the path of such procedure: (1) the matter was never raised initially in the trial

court, and (2) the lease provides for "remedies as may be available to the Lessor under the several laws of Wisconsin."

The judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.