Docket No. 106010.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

MAXINE SMITH *et al*., Appellants, v. JANET FREEMAN *et al*., Appellees.

*Opinion filed January 23, 2009.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

In this case, we must determine whether a successor judge may render a decision and enter judgment based on transcripts of testimony and documentary evidence offered at trial before a predecessor judge. Here, the parties agreed by way of stipulation that the successor judge could rule based on the written evidence, rather than conduct a trial *de novo*. On appeal, the appellate court reversed, holding that the parties' stipulation was insufficient to satisfy due process because resolution of the case rested on the credibility of the witnesses. No. 4–07–0460 (unpublished order under Supreme Court Rule 23).

For the reasons that follow, we reverse the judgment of the appellate court and remand to that court for further proceedings consistent with this opinion.

Background

The underlying cause of action was brought by various heirs of Goldie Carver, who died on May 23, 2001. Plaintiffs alleged that defendants, Janet and Cheryl Freeman, had exercised undue influence over Goldie and breached their fiduciary duties to her so as to benefit from numerous transactions in the two months preceding Goldie's death. Plaintiffs sought to set aside two quit claim deeds, one which deeded Goldie's residence to Janet and the other which deeded her 70-acre farm to Janet and Cheryl. Plaintiffs also challenged various monetary transactions that transpired from April 9, 2001, to the date of Goldie's death.

On January 19 and 20, 2006, a bench trial was held before Judge Millard Everhart in the circuit court of Cumberland County. Numerous witnesses testified. At the conclusion of the trial, the parties agreed to submit written closing arguments.

Before rendering a decision, Judge Everhart realized that in 2004 he had spoken with an interested party about issues relevant to the case. For this reason, Judge Everhart recused himself. The case was then assigned to Judge Dean Andrews. The parties agreed that Judge Andrews could rule on the matter based on the trial transcripts and trial evidence heard by Judge Everhart. However, before he could render a ruling, Judge Andrews retired.

The case was next assigned to Judge Dale Cini. Once again, the parties sought to have Judge Cini rule on the matter based on the transcripts and evidence from the earlier trial before Judge Everhart. Judge Cini obtained written authorization from the parties to proceed in this manner. On September 26, 2006, a "Consent to Resolution of Claims" was filed with the court. In this document, the parties consented to have Judge Cini resolve the matter after his consideration of the January 2006 trial transcripts along with the written closing arguments filed by the parties. The consent further provided "[s]hould the Court require further proceedings or oral

arguments, counsel for the parties would likewise submit themselves."

On November 6, 2006, Judge Cini entered judgment, finding for plaintiffs on counts I (undue influence/breach of fiduciary duty in connection with the farm) and III (undue influence/breach of fiduciary duty in connection with monetary transactions in which Janet was involved), and for defendants on count II (forgery of quit claim deeds). Judge Cini ordered plaintiffs' counsel to prepare a written order detailing the specific transactions to be set aside and the amounts to be repaid along with statutory interest.

On March 23, 2007, Judge Cini entered the order drafted by plaintiffs' attorney and approved by defendants' attorney. On count I, he found in favor of plaintiffs and ordered that both deeds be set aside. On count II, he found in favor of defendants. On count III, he found in favor of plaintiffs and set aside each monetary transaction that involved Janet and ordered her to repay all amounts plus statutory interest in the approximate amount of $175,000.

Defendants appealed, arguing that Judge Cini's decision was not supported by the facts and, therefore, his ruling should be reversed. Prior to oral argument, however, the appellate court *sua sponte* questioned whether Judge Cini had the authority to render a ruling without having actually heard the witnesses' testimony. The court instructed the clerk of the court to advise the parties to be prepared to address at oral argument the opinion of *Anderson v. Kohler*, 376 Ill. App. 3d 714 (2007), as well as the cases cited therein. Thereafter, citing *In re Marriage of Sorenson*, 127 Ill. App. 3d 967 (1984), the appellate court concluded that, because resolution of crucial matters rested on the credibility of witnesses, the parties' stipulation to allow Judge Cini to resolve the matter on the transcript and documentary evidence was ineffective because the proceedings did not satisfy due process. The appellate court reversed the trial court's judgment and remanded the matter for a new trial. We granted plaintiffs' petition for leave to appeal.

## Analysis

The general rule is that a successor judge may not make findings of fact or conclusions of law without a trial *de novo*. K. Kemper,

*Power of Successor or Substituted Judge, in Civil Case, to Render Decision or Enter Judgment on Testimony Heard by Predecessor*, 84 A.L.R.5th 399 (2000). The rationale underlying this rule is that due process entitles a litigant to have all the evidence submitted to a single judge who can see the witnesses testify and, thus weigh their testimony and judge their credibility. *Trzebiatowski v. Jerome*, 24 Ill. 2d 24, 25-26 (1962); *Mills v. Ehler*, 407 Ill. 602 (1950); *People ex rel. Reiter v. Lupe*, 405 Ill. 66, 71 (1950); *Anderson*, 376 Ill. App. 3d at 720 (noting the above three supreme court cases confirm that the "due process mandate–that findings of fact based on the demeanor of witnesses be made by a judge who observed the witnesses" applies to all cases, not simply marriage dissolution cases).

In the case at bar, the parties concede and the appellate court held that the due process mandate is not absolute and that parties may stipulate or agree to allow a successor judge to render a decision based on written evidence presented to a predecessor judge. See *Reiter*, 405 Ill. at 71; *Anderson*, 376 Ill. App. 3d 714; *In re Marriage of Sorenson*, 127 Ill. App. 3d 967. However, relying on *Sorenson*, defendants contend, as the appellate court held, that a stipulation is insufficient when resolution of the case rests on the credibility of witnesses.

In *Sorenson*, a petition for dissolution of marriage was at issue, including child custody. Trial was held before Judge Maddox, who recused herself before rendering a decision. *In re Marriage of Sorenson*, 127 Ill. App. 3d at 968. The case was reassigned to Judge Durr. On August 9, 1983, Judge Durr entered the following order:

> " 'It is the court's thought that this matter should be disposed of promptly and without further and unduly burdensome time consumption or financial injury to the parties, and that those goals could best be achieved by entry of a judgment based on a review of the Common Law Record and the transcript of the testimony already presented, rather than the requiring of further hearings.' " *In re Marriage of Sorenson*, 127 Ill. App. 3d at 968.

The next day, Judge Durr entered another order that provided: " '[a]ny objections to the procedure set forth in the Order of Aug. 9, 1983 for resolving the issues herein shall be set forth and filed by Sept. 7, 1983.' " *In re Marriage of Sorenson*, 127 Ill. App. 3d at 968.

Both the *pro se* petitioner (wife) and the respondent (husband) agreed to the court proceeding as proposed. Judge Durr granted custody of the child to the husband. The wife appealed, arguing that Judge Durr was without authority to enter judgment based solely on the record. *In re Marriage of Sorenson*, 127 Ill. App. 3d at 968.

The appellate court noted that no Illinois case had yet addressed the question of whether a successor judge could make findings of fact based only upon transcribed testimony and whether litigants could stipulate to such a procedure. *In re Marriage of Sorenson*, 127 Ill. App. 3d at 969. The court then noted that, while other jurisdictions were divided on the question of whether a successor judge could make findings of fact on written evidence alone, it was generally held that such a procedure is proper if the parties stipulate to it. *In re Marriage of Sorenson*, 127 Ill. App. 3d at 969. The appellate court agreed with the general rule. However, it placed a limitation on the rule, holding that a trial *de novo* may be warranted "where critical determinations necessarily hinge upon the credibility of one witness or set of witnesses over another. (*Moore Golf, Inc. v. Lakeover Golf & Country Club, Inc.* (1975), 49 A.D.2d 583, 370 N.Y.S.2d 156.)" *In re Marriage of Sorenson*, 127 Ill. App. 3d at 969.

The *Sorenson* court concluded that in the case before it, a trial *de novo* was necessary because the trial transcript was "replete with contradictory testimony." *In re Marriage of Sorenson*, 127 Ill. App. 3d at 969-70. In so concluding, the court found, that "[w]here the testimony of the respective parties and their witnesses was contradictory on matters crucial to a determination of comparative parental fitness, we do not believe the interests of [the minor child] were best served by credibility thus attributed on the basis of data which was inherently incomplete." *In re Marriage of Sorenson*, 127 Ill. App. 3d at 970. The *Sorenson* court went on to state, "If, by reason of their stipulation, [the petitioner and the respondent] were not entitled to a determination of their comparative parental fitness by a trier of fact who was afforded the opportunity to discern truthfulness by observing the demeanor of contradictory witnesses, [the minor child], whose life is singularly affected by such a determination, was so entitled." *In re Marriage of Sorenson*, 127 Ill. App. 3d at 970. Accordingly, the court held that the stipulation by the parties, "insofar

as it relates to a finding of parental fitness," was inoperative. *In re Marriage of Sorenson*, 127 Ill. App. 3d at 970.

In *In re Marriage of Fotsch*, 139 Ill. App. 3d 83 (1985), another district of the appellate court criticized *Sorenson* and declined to follow it. In *Fotsch*, the original trial judge awarded custody of the minor child to the husband, but stated it would determine in six months whether joint custody was feasible. *Fotsch*, 139 Ill. App. 3d at 85. Six months later, the wife petitioned the court for a change of custody. Judge Ruffolo conducted a 14-day trial. Thereafter, she recused herself and the case was reassigned to Judge Kaufman, who began hearing the matter at the point Judge Ruffolo left off. Although the parties, including the attorney for the minor child, stipulated that Judge Kaufman could use the transcripts from trial proceedings conducted by Judge Ruffolo, Judge Kaufman found he was prohibited from doing so by *Sorenson*. *Fotsch*, 139 Ill. App. 3d at 85. The circuit court then certified the following question for review:

> " 'Whether the Court has authority, upon stipulation by the parties, to adopt the transcript of testimony taken in the same proceedings before a different judge, where the parties, their present spouses and all expert witnesses, whose testimony was transcribed will be called to testify again before the Court as to other facts, but will not testify as to matters about which they have previously testified nor will such cross-examination be permitted, but other witnesses, namely independent occurrence witnesses, will not be recalled \*\*\*?' " *Fotsch*, 139 Ill. App. 3d at 86.

The *Fotsch* court reviewed the facts of *Sorenson* and noted that its holding was based "primarily on considerations of public policy," *i.e.*, on the overriding concern for the best interests of the child. *Fotsch*, 139 Ill. App. 3d at 86-87. The *Fotsch* court then found that the factual scenario before it significantly differed from *Sorenson*. First, the wife in *Sorenson* was not represented by counsel and, therefore, this could call into question the voluntariness of her stipulation. Second, the parties in *Fotsch* initiated the request to use the transcripts, whereas it was the judge who did so in *Sorenson*. Third, and most significantly, the child in *Fotsch* was represented by counsel. Fourth, the decision rendered by the successor judge in *Sorenson* was based solely on prior testimony, whereas in *Fotsch* the

successor judge did observe the parties as well as other witnesses testify. *Fotsch*, 139 Ill. App. 3d at 87.

The *Fotsch* court concluded that *Sorenson* was not controlling because the facts of *Sorenson* were too dissimilar and the policy considerations that controlled that decision were not present before it. The *Fotsch* court further found that *Sorenson* conflicted with well-established precedent of this state as well as other states which allows parties to consent to allowing a successor judge to make findings based on prior written evidence. *Fotsch*, 139 Ill. App. 3d at 87. The *Fotsch* court noted that the parties can so agree even where credibility issues are involved. *Fotsch*, 139 Ill. App. 3d at 88 (citing *Kirschenbaum v. City of Chicago*, 43 Ill. App. 3d 529 (1976), and *Great Northern Ry. Co. v. Becher-Barrett-Lockerby Co.*, 200 Minn. 258, 274 N.W.522 (1937)). *Sorenson* did not cite either of these cases but, instead, relied on *Moore Golf, Inc.*, a memorandum decision from the Appellate Division of New York, "a lower court of review," which was devoid of any legal reasoning or a single reference to precedent. According to *Fotsch*, this decision was, therefore, "poor authority with which to upset the long established practice of this State." *Fotsch*, 139 Ill. App. 3d at 88-89.

The *Fotsch* court also stated that, while *Sorenson* relied on the public policy of protecting the best interests of children, "it did not explain why that policy requires a trial *de novo* without regard to whether the record supports the trial court's resolution of the custody issue." *Fotsch*, 139 Ill. App. 3d at 89. The *Fotsch* court "fail[ed] to see how children are best served by having their parents reduced to penury by multiple trials." *Fotsch*, 139 Ill. App. 3d at 89. Moreover, since the circuit court retains jurisdiction during the child's minority, this serves as an added protection in child custody cases. "Hence, there is no need to make custody cases the subject of an exception to the general rule that successor judges may, upon stipulation, adjudicate the case on the prior record." *Fotsch*, 139 Ill. App. 3d at 89. Accordingly, *Fotsch* held that "we cannot conclude that [*Sorenson*'s] holding rises to a general rule that transcripts may never be considered in child custody cases, particularly in cases where, as here, the children's attorney consents to the use of the transcripts. Such an inflexible rule would needlessly lengthen litigation and burden a class of litigants which is generally little able to afford the

cost of such proceedings." *Fotsch*, 139 Ill. App. 3d at 89. The *Fotsch* court thus answered the certified question in the affirmative.

As noted, there is no question parties can agree or stipulate that a successor judge may make a determination of the issues based on evidence heard by a predecessor judge. *People ex rel. Reiter*, 405 Ill. at 71. The question is whether in cases in which credibility may be crucial to a determination of the cause the parties are prohibited from stipulating. Defendants maintain that *Sorenson*, as opposed to *Fotsch*, is the better reasoned decision and its holding better protects due process rights and the integrity of the judicial system. Defendants urge us to adhere to *Sorenson*'s limitation on the parties' ability to stipulate.

Individuals may waive substantive rules of law, statutory rights and even constitutional rights. *In re Estate of Ferguson*, 313 Ill. App. 3d 931, 937 (2000). This includes due process rights. See, *e.g.*, *People v. Stroud*, 208 Ill. 2d 398 (2004) (right to be physically present in courtroom for entry of a guilty plea); *People v. Campbell*, 208 Ill. 2d 203 (2003) (constitutional right to confront witnesses by stipulating to admission of evidence); *Suburban Downs, Inc. v. Illinois Racing Board*, 316 Ill. App. 3d 404 (2000) (waiver of due process right to formal hearing before Racing Board). To be a valid waiver of a constitutional right, it must be shown that there was " ' "an intentional relinquishment or abandonment of a known right ***." ' [Citation.]" *People v. McClanahan*, 191 Ill. 2d 127, 137 (2000). The waiver "must be ' "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." ' [Citations.]" *McClanahan*, 191 Ill. 2d at 137.

In the case *sub judice*, a litigant's right to have the cause determined by the judge who heard the evidence and observed the witnesses is a due process right. *People ex rel. Reiter*, 405 Ill. at 71. We find that, like other elements of due process, this right may be waived. Based on the above principles, we believe that, if the parties enter into an agreement or stipulation to allow a successor judge to decide the case based on written evidence received by a predecessor judge and that agreement is knowing, intentional, and voluntary, it is valid and the parties are bound by it.

Defendants do not contend that they entered into the stipulation under threat, coercion, or in any manner that would suggest it was

involuntary or unknowing. Rather, as plaintiffs posit, defendants had full knowledge of the issues Judge Andrews and later Judge Cini were to resolve and freely granted them that authority. The parties were faced with the prospect of retrying the entire matter and recalling all witnesses, some of whom were elderly. Rather than retrying the case, the parties, including defendants, knowingly and intentionally chose how to proceed–allow the successor judge to decide the matter, including resolution of factual questions and, thus, the inevitable credibility issues underlying those factual questions, based on the evidence presented to the predecessor judge. The decision to proceed in this manner allowed the parties to avoid the delay and expense of a new trial. Defendants were fully aware of the relevant circumstances and consequences of agreeing to allow Judge Cini to decide the case based on the trial transcripts and evidence. Defendants have not demonstrated that their waiver of the due process right to have the matter decided by the judge who heard the evidence and saw the witnesses was invalid. Accordingly, defendants were bound by their stipulation and waived their right to a trial *de novo* before Judge Cini.

It is a common practice for a judge, and even a jury, to make credibility determinations based on transcripts of testimony. This is true in cases tried upon depositions, particularly in medical malpractice cases, and where a retrial is conducted based on testimony from a prior trial. Were we to adopt the appellate court's limitation, trial courts would no longer be able to proceed in this manner. Instead, the parties would be required, whether they desired it or not, to call all witnesses to the stand so that the trier of fact could observe and hear them, thus wasting time and expense. Moreover, such a ruling would go against this court's tendency to favor stipulations and simplification of trial proceedings through the parties' agreements. Similarly, holding as the appellate court did would go against the well-established principle that parties may waive due process rights. Such a limitation would not serve the judicial process or the interest in promoting judicial efficiency and administration. Accordingly, we hold that parties may waive the right to a trial *de novo* before a successor judge even where a determination of the cause hinges on issues of credibility.

Conclusion

For the reasons set forth above, we hold that the appellate court erred when it held that the parties' stipulation to allow Judge Cini resolve the case based on the written evidence presented to Judge Everhart was insufficient to satisfy due process, and thus we reverse its judgment. Because the appellate court did not address defendants' claims that Judge Cini's rulings were against the manifest weight of the evidence, we remand this matter to the appellate court for that purpose.

*Reversed and remanded.*