# Illinois Official Reports

## Appellate Court

---

*Takiff Properties Group Ltd. #2 v. GTI Life, Inc.*, **2018 IL App (1st) 171477**

---

| | |
|---|---|
| Appellate Court Caption | THE TAKIFF PROPERTIES GROUP LTD. #2, Plaintiff-Appellee, v. GTI LIFE, INC., and GUY IANTONI, Defendants-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-17-1477 |
| Filed | December 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2015-M1-114035; the Hon. Patricia S. Spratt, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas J. Nitschke, of Blaise & Nitschke, P.C., of Chicago, for appellants.<br><br>Arnold H. Landis, of Law Offices of Arnold H. Landis, P.C., of Chicago, for appellee. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Presiding Justice Mason concurred in the judgment and opinion.<br>Justice Hyman specially concurred, with opinion. |

¶ 1      The Takiff Properties Group Ltd. #2, the plaintiff-landlord in this dispute, entered into a commercial lease with GTI Life, Inc., the defendant-tenant. Defendant Guy Iantoni served as tenant's guarantor.[1] Following a bench trial, the court entered judgment in landlord's favor with respect to its claim that tenant, which had abandoned the property, owed overdue rent. The court also found that the lease contractually waived landlord's obligation to mitigate damages under section 9-213.1 of the Code of Civil Procedure (735 ILCS 5/9-213.1 (West 2014)). On appeal, tenant asserts that the trial court should have entered judgment in its favor because parties cannot contractually negate section 9-213.1 and, even if they can, landlord waived its right to assert any contractual waiver. Tenant also contends landlord failed to present evidence that it attempted to mitigate its damages. For the following reasons, we affirm the trial court's judgment.

¶ 2                                    I. Background

¶ 3      In 2008, landlord leased to tenant the property located at 633 Skokie Boulevard, Suite 250, Northbrook, Illinois. Although the lease was initially for one year, it was extended through October 31, 2014, with an eventual increase in rent to $2167 per month. The lease contained several cumulative remedies benefitting landlord, including the following:

> "*If the Lessee abandons the premises* or otherwise entitles the Lessor so to elect, and the Lessor elects to terminate the Lessee's right to possession only, without terminating the lease, the Lessor may, at the Lessor's option enter into the premises, *** and take and hold possession thereof. *** Upon and after entry into possession without termination of the lease, *the Lessor may, but need not, relet the premises* or any part thereof for the account of the Lessee to any person, firm or corporation other than the Lessee for such rent, for such time and upon such terms as the Lessor in the Lessor's sole discretion shall determine, and the Lessor shall not be required to accept any Lessee offered by the Lessee or to observe any instructions given by the Lessee about such reletting."[2] (Emphases added.)

¶ 4      On June 25, 2015, landlord filed a complaint alleging that tenant owed $18,309.97 in unpaid rent as well as attorney fees and costs. Ultimately, tenant filed an answer admitting that "a certain amount of money" had not been paid but denying that the amount due was $18,309.97. As an affirmative defense, tenant alleged that landlord failed to exercise reasonable diligence to mitigate its damages. Specifically, landlord knew or should have known that tenant no longer possessed the premises after March 2014. Yet, landlord made no effort to relet the premises until approximately the summer of 2014. Tenant alleged that because landlord failed to mitigate damages, it was not entitled to any unpaid rent. Landlord did not file a response to the defense raised.

¶ 5      The matter proceeded to trial on February 15, 2017. No court reporter was present but the parties submitted bystander reports for the trial court's approval. According to landlord's proposed bystander's report, Steve Freeman testified on landlord's behalf that it relet the

---

[1]For purposes of this opinion, "tenant" will refer to both GTI Life, Inc., and Iantoni.

[2]We note there is no suggestion that landlord terminated the lease upon tenant's abandonment.

premises on August 1, 2014, prior to the lease expiration, and did not charge tenant rent for the remaining period. On cross-examination, "Freeman testified that he had no personal knowledge of the specific steps that [landlord] took to relet the Premises but that he believed the Premises were listed." Landlord's bystander report further stated that Iantoni testified, on tenant's behalf, that certain personal property left on the premises was not returned.

¶ 6 The bystander's report submitted by landlord concluded that after hearing argument and considering the testimony as well as the documents admitted into evidence, the court entered judgment in landlord's favor for $21,616.30. In addition, "[t]he court found that [tenant] had contractually waived [landlord's] duty to mitigate," and the court rejected the suggestion that such duty could not be contractually waived. The trial court subsequently certified landlord's bystander's report, to the exclusion of the report submitted by tenant, and added that tenant "provided no legal authority for [its] position that the waiver of mitigation in the lease is unenforceable."

¶ 7 Tenant moved for the court to reconsider, arguing that Freeman admitted he had no knowledge of any actions taken to mitigate landlord's damages and that parties could not contract away landlord's "statutory duty to mitigate damages." See *id.* They argued that landlord attempted to contract itself out of its statutory duty through the lease's language stating that the landlord could, but was not required to, relet the premises. Tenant did not, however, identify any case stating that a statutory duty, let alone, this statutory duty, could not be contractually waived. According to the proposed bystander's report certified by the court, the trial court denied the motion to reconsider, finding that tenant had not pled that landlord had a statutory duty to mitigate, as opposed to a common law duty.

¶ 8                                                    II. Analysis

¶ 9 On appeal, tenant asserts that (1) landlord failed to present evidence of mitigation, (2) landlord waived its right to assert the contractual provision excusing it from reletting the premises, and (3) the parties could not have contracted away landlord's statutory duty to mitigate damages. We first examine the nature of section 9-213.1.

¶ 10                               A. Section 9-213.1: Duty or Defense

¶ 11 "After January 1, 1984, a landlord or his or her agent shall take reasonable measures to mitigate the damages recoverable against a defaulting lessee." *Id.* The doctrine of mitigation is often characterized as imposing a "duty" on an injured party, but this characterization is inaccurate. *St. George Chicago, Inc. v. George J. Murges & Associates, Ltd.*, 296 Ill. App. 3d 285, 293 (1998); Timothy J. Patenode & William J. Dorsey, *Tenant Defaults and Landlord Remedies*, in Commercial Landlord-Tenant Practice § 8.23, at 8-19 (Ill. Inst. for Cont. Legal Educ. 2015) (stating that "the duty to mitigate is not correctly spoken of as a duty"). The injured party incurs no liability for failing to act; rather, his recovery is reduced by the amount of loss he could have avoided incurring. *St. George Chicago, Inc.*, 296 Ill. App. 3d at 293 (citing Restatement (Second) of Contracts § 350, cmt. b, at 127 (1981)). This confusion is reflected in the parties' pleadings, which refer to section 9-213.1 both as a duty and as an affirmative defense.

¶ 12 Moreover, as this court has previously observed, section 9-213.1 left out many details. *Snyder v. Ambrose*, 266 Ill. App. 3d 163, 166 (1994). More than 30 years after the statute was enacted, many details are still wanting. The statute's language does not identify where the

burden lies, although our appellate court has determined it lies with the landlord. See *id.* Pertinent to this appeal, the statute does not clearly indicate whether the legislature intended to eliminate contracting parties' ability to excuse a landlord from attempting to mitigate damages. *Cf. City of Evanston v. Create, Inc.*, 85 Ill. 2d 101, 106, 114-15 (1981) (where the parties apparently did not dispute that an ordinance, requiring landlords to "make a good faith effort to rent [property] at a fair rental," intended to foreclose contractual waiver of such duty, the supreme court rejected the landlord's assertion that the ordinance impermissibly interfered with the right to contract (internal quotation marks omitted)).

¶ 13    Tenant contends that as a categorical rule, parties cannot waive statutory requirements. Our supreme court, however, has held that they can. *Smith v. Freeman*, 232 Ill. 2d 218, 228 (2009). Generally, individuals may waive statutory rights, so long as the waiver is voluntary, knowing, and intentional. *Elsener v. Brown*, 2013 IL App (2d) 120209, ¶ 83; see also *State of Illinois Department of Central Management Services v. State of Illinois Labor Relations Board, State Panel*, 373 Ill. App. 3d 242, 255 (2007) (stating that a labor agreement can contain a contractual waiver of a statutory right if the waiver is unmistakable and clear). That being said, the State can adopt statutes impinging on private parties' ability to contract. *City of Evanston*, 85 Ill. 2d at 114. The question is whether the legislature intended to do so here.

¶ 14    Given that section 9-213.1 is riddled with ambiguities, we now consider the legislative history of this statute, something that the handful of cases addressing this statute have not previously done. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 132011, ¶ 33 (stating that a statute is ambiguous where its meaning cannot be interpreted from the statute's plain language). As our supreme court has stated, legislative history and debates constitute "[v]aluable construction aids in interpreting an ambiguous statute." (Internal quotation marks omitted.) *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 15 (citing *Advincula v. United Blood Services*, 176 Ill. 2d 1, 19 (1996)). We begin with the state of the law prior to the statute's enactment.

¶ 15    Pursuant to the common-law doctrine of mitigation of damages, a plaintiff asserting a breach of contract claim cannot recover losses that it could have reasonably avoided. *Boyer v. Buol Properties*, 2014 IL App (1st) 132780, ¶ 67 (citing Restatement (Second) of Contracts § 350 (1981)). This doctrine has long constituted an affirmative defense to be pleaded and proved by the defendant. *Rozny v. Marnul*, 43 Ill. 2d 54, 73 (1969). Additionally, defense counsel conceded at oral arguments in this appeal that the common law duty to mitigate damages can be contractually waived. That being said, before section 9-213.1 was enacted, Illinois was divided as to whether landlords had a common law duty to mitigate damages where a tenant abandoned the premises. See *In re Estate of Conklin*, 116 Ill. App. 3d 426, 429 (1983). One line of authority held that a landlord had absolutely no duty to mitigate, a second dictated that the general rule requiring a party to mitigate damages applied equally to landlords, and a third found that a landlord's duty was limited to accepting suitable subtenants when offered. See *id.*

¶ 16    In 1983, the House of Representatives presented the statute in question, which remains substantially the same today. According to Representative Preston:

"House Bill 986 amends the Code of Civil Procedure to require a landlord to take reasonable steps to mitigate damages against a tenant who is in default. *** In all areas of contract law in this state, without exception, except for the one that I'm going to mention, the nondefaulting, the nonbreaching party has a duty, imposed by law, to take

- 4 -

reasonable steps to try to reduce the damages against the party who is in default. That is true in every contract in Illinois and throughout the United States, except in Illinois for landlord-tenant contract, which we normally call leases. *Through a throwback to Old English Common Law, a landlord does not have to do anything to try to reduce the damages against a tenant in default.* As a matter of fact, landlords do it anyway, even though they don't have to, because it's, frankly, crazy not to try to do something to reduce your damages \*\*\*. \*\*\* I have to take reasonable measures to try to mitigate or reduce those damages. That is all that this Bill does in landlord-tenant lease situations. It requires reasonable measures to try to reduce the amount of damages. Now, this sounds like this is really changing the law a great deal, but, in fact, it's not changing the law almost at all." (Emphasis added.) 83 Ill. Gen. Assem., House Proceedings, May 12, 1983, at 63 (statements of Representative Preston).

¶ 17 Representative Preston's remarks show that the legislature enacted section 9-213.1 to ensure that landlords have the same duty to mitigate damages that other contracting parties have. To the extent that the trial court drew a distinction here between a landlord's common law duty to mitigate and its statutory duty to mitigate, no meaningful distinction exists. The statute adopted the same common law duty that applied to every other contracting party: no more, no less. A lack of mitigation remains an affirmative defense. Furthermore, prior decisions applying section 9-213.1 do not change our determination.

¶ 18 In *Snyder*, the defendant-tenant's attorney attempted to cross-examine the plaintiff-landlord as to his efforts to mitigate damages. *Snyder*, 266 Ill. App. 3d at 165. When the landlord objected to such questioning in the absence of a pled defense alleging the failure to mitigate damages, the trial court sustained the objection. *Id.* On appeal, the reviewing court acknowledged that section 9-213.1 left out many details, including who had the burden of proof, but the court did not engage in statutory interpretation of this ambiguous statute. The court did not consider Representative Preston's statements before the House of Representatives. *Id.*

¶ 19 The reviewing court found that a landlord should shoulder the burden of showing mitigation given that such evidence was chiefly within the landlord's control. *Id.* at 166. " 'Where a party alone possesses information concerning a disputed issue of fact and fails to bring forward that information, and it is shown that it can be produced by him alone, a presumption arises in favor of his adversary's claim of fact.' " *Id.* (quoting *Belding v. Belding*, 358 Ill. 216, 220-21 (1934)). The reviewing court found that the landlord was in the best position to present evidence on mitigation and requiring the tenant to show a lack of mitigation would impose an arduous task. *Id.* at 167. Moreover, the reviewing court found it was error for the trial court to find the landlord would be surprised at having to prove he mitigated damages, something he had an affirmative duty to do under section 9-213.1. *Id.* at 165. Because the landlord presented no evidence of mitigation, the reviewing court reversed the judgment previously entered in his favor and remanded for further proceedings. *Id.* at 167.

¶ 20 Four years after *Snyder*, in *St. George Chicago, Inc.*, the appellate court revisited section 9-213.1. The contractual provision there entitled the plaintiff-landlord to recover the present value of the lease rent for the unexpired term less the present fair rental value for the unexpired term. *St. George Chicago, Inc.*, 296 Ill. App. 3d at 290. Rather than considering whether the landlord's *conduct* satisfied its statutory duty to mitigate, the court framed the issue as whether the lease provision itself satisfied the landlord's statutory duty to mitigate. *Id.*

¶ 21 The reviewing court found that while a defaulting tenant could theoretically extinguish liability if a property was immediately relet, this was unlikely and the challenged lease provision created a best case scenario by limiting any liability to the excess of the lease rate over the market rate. Consequently, the lease provision accomplished what the statute intended without any risk to the tenant that efforts to relet might be unsuccessful. *Id.* at 291. The reviewing court concluded that the landlord's "actual efforts in mitigation" were irrelevant to the period following the termination of the lease but that, conversely, the landlord "must demonstrate actual reasonable measures to mitigate damages" to recover unpaid rent for the four months before the lease was terminated. *Id.* at 291-92. *St. George Chicago, Inc.*, did not specifically address whether parties can contractually waive the requirement of section 9-213.1.[3]

¶ 22 To assist the trial court on remand, the court in *St. George Chicago, Inc.*, agreed with *Snyder* that a landlord should bear the burden of demonstrating mitigation, contrary to the general rule requiring a defendant to plead and prove a lack of mitigation. *Id.* at 292-93.That being said, the reviewing court disagreed with *Snyder* to the extent it required proof of mitigation as a prerequisite to recovering damages. *Id.* at 293. Following *St. George Chicago, Inc.*, it is generally settled that where a landlord cannot demonstrate that it took reasonable steps to mitigate damages, the award of any damages will be reduced by those losses the landlord could reasonably have avoided. *Danada Square, LLC v. KFC National Management Co.*, 392 Ill. App. 3d 598, 608, 610 (2009).

¶ 23 We question aspects of both *Snyder* and *St. George Chicago, Inc.* We disagree with *Snyder*'s suggestion that section 9-213.1 transformed the mitigation doctrine into something other than an affirmative defense to be alleged, if not proven, by the defendant-tenant. See also Timothy J. Patenode & William J. Dorsey, *Tenant Defaults and Landlord Remedies*, in Commercial Landlord-Tenant Practice § 8.23, at 8-18 to -19 (Ill. Inst. for Cont. Legal Educ. 2015) (stating "[t]he authors believe that there is a good-faith basis for reversing the holdings of *St. George* and *Snyder*" because the statute could have been intended to merely reconcile the differing lines of authority regarding a landlord's duty to mitigate). Contrary to *Snyder*, we also find that having notice of one's obligations outside the courtroom is substantially different from having notice of what one must be prepared to defend against inside the courtroom. Furthermore, *St. George Chicago, Inc.*, considered mitigation of the tenant's liability, not the landlord's mitigation of its damages, as called for by the statute. Because neither case considered whether a tenant may contractually waive its statutory right to assert a lack of mitigation as an affirmative defense, we find those cases do not preclude contractual waiver of the statute. But see Timothy J. Patenode & William J. Dorsey, *Tenant Defaults and Landlord Remedies*, in Commercial Landlord-Tenant Practice § 8.23, at 8-18 (Ill. Inst. for Const. Legal Educ. 2015) (stating that "[a]lthough there is no case clearly on point, the careful practitioner should assume that the enactment repeals earlier cases holding that the duty of mitigation is waivable by the tenant"). Simply put, tenant has not shown that parties cannot contractually waive the obligation and corresponding right found in section 9-213.1. With that, we turn to

---

[3]Another contractual provision purported to excuse the landlord from reletting the property if the lease itself was not terminated. *St. George Chicago, Inc.*, 296 Ill. App. 3d at 291. Because the lease was terminated, the reviewing court found it did not need to consider whether that provision was contrary to law. *Id.*

the case before us.

¶ 24                                    B. Contractual Waiver

¶ 25        Tenant contends that landlord waived its right to assert the contractual provision that excused it from reletting the property. While we agree with landlord that this argument lacks cohesion (see *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010)), we find the thrust of the argument to be as follows: (1) landlord, by failing to respond to the affirmative defense raised, admitted that it failed to mitigate damages; (2) landlord's admission that it failed to mitigate damages is inconsistent with its assertion that it was not required to mitigate damages and that, in any event, it did mitigate damages; and (3) landlord's admission waived the right to present those inconsistent arguments.

¶ 26        A contracting party may waive a contractual provision intended to benefit that contracting party. *Barker v. Leonard*, 253 Ill. App. 3d 661, 663 (1994). Actions suggesting that the party will not require strict compliance with the beneficial provision may be evidence of waiver. *Id.* Furthermore, courts may find implied waiver of a legal right where the party against whom waiver is being asserted takes actions that are inconsistent with anything other than an intention to waive that legal right. *Id.*

¶ 27        Landlord first disputes that by neglecting to respond to the affirmative defense, landlord admitted it failed to mitigate damages. See 735 ILCS 5/2-610 (West 2014); *Pancoe v. Singh*, 376 Ill. App. 3d 900, 908 (2007) (stating that the failure to reply to an affirmative defense generally results in an admission). Specifically, landlord notes that a defendant waives the right to challenge the plaintiff's failure to reply to an affirmative defense where the defendant introduces evidence supporting that defense. *Pancoe*, 376 Ill. App. 3d at 908. Landlord cites defense counsel's cross-examination of Freeman. For those keeping track, landlord essentially contends that tenant *waived* the right to assert landlord's alleged *waiver* of tenant's contractual *waiver*.

¶ 28        Tenant responds, however, that defense counsel questioned Freeman regarding his inability to testify regarding landlord's efforts to mitigate damages, not landlord's actual lack of effort to mitigate damages. We are not persuaded. Not only is tenant splitting hairs, but there would be no reason to ask Freeman about his knowledge of mitigation, or lack thereof, unless defense counsel was attempting to show that landlord had not engaged in mitigation. Thus, tenant waived the right to require an answer to its affirmative defense. It follows that landlord did not admit that it failed to mitigate damages. Furthermore, landlord's lack of response did not unequivocally reflect an intention to waive its contractual right not to relet the premises.

¶ 29        Here, two commercial parties entered into a commercial lease purporting to waive tenant's right to have landlord attempt to relet the property upon tenant's default. Tenant has identified no policy preventing the enforcement of the contract in these particular circumstances. See *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 64-65 (2006) (stating that a private contractual provision is not contrary to public policy unless it clearly contradicts that which the constitution, statutes, or case law have declared to be public policy or it is manifestly injurious to the public's welfare). There is no suggestion that there is a disparity in bargaining power between these commercial entities. Consequently, tenant has not shown that the trial court erred in enforcing the lease provision that excused landlord from reletting the premises.

¶ 30                                    III. Conclusion

¶ 31       Section 9-213.1 merely extended to tenants the same common law affirmative defense previously available to every other litigant. Here, however, tenant contractually waived that affirmative defense. Absent any reason why this contractual waiver should not be enforced, we affirm the trial court's judgment. In light of our determination, we need not consider whether landlord presented sufficient evidence that it mitigated its damages.

¶ 32       For the foregoing reasons, we affirm the trial court's judgment.

¶ 33       Affirmed.

¶ 34       JUSTICE HYMAN, specially concurring:

¶ 35       I concur in the result but write separately because I disagree with the majority's consideration of—much less reliance on—"legislative history" in determining whether the landlord had a duty under section 9-213.1 to mitigate damages. 735 ILCS 5/9-213.1 (West 2014). The majority writes that section 9-213.1 is "wanting" in detail and "riddled with ambiguities" and turns to comments made during debate in the House of Representatives to divine its meaning. I would refrain from doing so because, as a tool of construction, legislative history renders a narrative of little value and, besides, is unnecessary to resolve the issue before us.

¶ 36       The use of legislative history in construing a statute's meaning is often problematic even when interpreting an ambiguous statute. As Justice Scalia noted, "[w]e are governed by laws, not by the intentions of legislators." *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring). "[L]egislators do not make laws by making speeches on the floor of the legislative chamber." *Town of the City of Bloomington v. Bloomington Township*, 233 Ill. App. 3d 724, 736 (1992). "They make laws by majority vote on a specifically worded bill that has been read three times before each house and distributed to each legislator." *Id.*; see also Ill. Const. 1970, art. IV, § 8(c), (d). "Neither the disclosed nor undisclosed intent of a legislator *** becomes law; only the bill as it reads when passed becomes law." (Emphasis omitted.) *Town of the City of Bloomington*, 233 Ill. App. 3d at 736.

¶ 37       Moreover, statements made by individual legislators during floor debates or in committee reports do not necessarily reflect the intent of those who ultimately voted to enact the law. For instance, the majority focuses solely on the remarks of Representative Preston. The comments of one legislator cannot be deemed reflective of the views of the entire body. Indeed some, if not many, legislators might not have heard the comments or been aware of them when they voted. See, *e.g.*, *Krohe v. City of Bloomington*, 329 Ill. App. 3d 1133, 1139 (2002) (Steigmann, J., dissenting); *McKinley Foundation at the University of Illinois v. Illinois Department of Labor*, 404 Ill. App. 3d 1115, 1128 (2010) (legislators do not delegate to their colleagues who choose to speak about a bill "the authority to define what it means. Instead, the senators who choose not to speak on the bill are entirely justified in relying upon the words it contains, not the remarks of their colleagues construing those words in whatever fashion they wish."); see also Frank H. Easterbrook, *Text, History, and Structure in Statutory Interpretation*, 17 Harv. J.L. & Pub. Pol'y 61, 68 (1994) (arguing legislative history is unreliable because legislative intent is "elusive for a natural person, fictive for a collective body").

¶ 38    And comments by legislators may not express their own views about the meaning and intent of a statute but the views of third parties, such as interest groups and lobbyists. See Jack Schwartz & Amanda Stakem Conn, *The Court of Appeals at the Cocktail Party: The Use and Misuse of Legislative History*, 54 Md. L. Rev. 432, 455 (1995) (noting, "[e]xcessive reliance on legislative history invites lobbyists to try to win indirectly, through the legislative history, what they lack the votes to win directly"). Although I would not suggest Representative Preston's remarks were anything other than his own, they do represent the views of a single legislator in one of two legislative bodies that passed the statute (it should be noted that throughout his service in Springfield, Representative Preston earned a reputation as a responsible, independent, and effective legislator). To the extent the comments can ever properly be deemed "legislative history," I reject the notion that this court should rely on them in construing section 9-213.1.

¶ 39    A court's primary function in interpreting a statute involves determining and giving effect to the legislature's intent in enacting the statute. And legislative intent best reveals itself through the language of the statute. See *Walker v. Rogers*, 272 Ill. App. 3d 86, 90 (1995). A court construing a statute should read it as a whole, give the statutory language its plain meaning, and import to the statute the fullest possible meaning to which it is susceptible. *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 268 Ill. App. 3d 471, 484 (1994). Thus, while a court may properly consult dictionaries and other appropriate sources in interpreting the meaning of ambiguous terms contained in a statute, the intent of any individual legislators before enacting a statute, arguably, has no compelling or functional relevance.

¶ 40    Furthermore, the majority's resort to legislative history does nothing to clarify the waiver issue. Our supreme court has held that parties may waive statutory requirements, such as section 9-213.1's directive that a landlord take reasonable measures to mitigate damages. See *Smith v. Freeman*, 232 Ill. 2d 218, 228 (2009). The parties' lease absolved the landlord of any duty to mitigate damages. Thus, I would stay clear of the murky and turgid waters of legislative history.